UNITED STATES v. TONER.

No. 9718.

United States Court of Appeals
Third Circuit.
Argued Jan. 21, 1949.
Decided Feb. 11, 1949.

Thomas D. McBride, of Philadelphia, Pa. (David Berger, of Philadelphia, Pa., Wilfred R. Lorry, Charles Lakatos and Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), for appellant.

Leon J. Fox, Asst. U. S. Atty., of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

This is a war frauds case. The defendant was indicted and convicted on six counts

for conspiracy and substantive offenses.[1] Upon appeal he makes several points.

1. The Trial Court's instruction concerning codefendant. Defendant was originally indicted with one, John F. McLaughlin. Immediately before trial McLaughlin pleaded nolo contendere. After the Trial Judge had charged the jury, the defendant's counsel asked him to give an instruction " * * * that the fact that McLaughlin pled guilty is not to be considered by the jury as any evidence whatsoever in determining whether or not Mr. Toner is guilty." The Trial Judge said: "The fact that Mr. McLaughlin pled guilty is not evidence against Toner, but the jury can take into consideration that one of two co-conspirators did plead guilty and make such use of it as they see fit. That is where the American common sense comes in. I won't define any further what they can do and cannot do with that kind of evidence."

■ The Government makes the point that the defendant's request was not timely. That point is irrelevant here. A request to charge on this particular issue was made to the Judge and he complied with the request. The present question is whether the instruction he gave was right.

We think it was error and the type of error which was calculated to mislead the jury, and in fact must have misled them if they paid attention to what the Judge told them. It is argued that we must consider the charge as a whole. Of course we have. It was carefully prepared and covered the ground thoroughly. But this particular instruction came after the general charge had been given and in response to a particular request. The first part of the statement is right. But after the entirely correct charge had been given, the remainder of the instruction was inconsistent with what was first said and gave the jury leave to

consider McLaughlin's guilty plea in any way it pleased, subject only to the limits of "American common sense".

From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore, Evidence § 1171 et seq. (3d ed. 1940).

■ The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy.[2] So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged.[3] The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.[4] We think that the charge given upon this point was contrary to that rule and inadvertently, of course, deprived the defendant of a very substantial protection to which he was entitled.

This proposition is sufficient to require a reversal. But since other points are raised by the defense and since at least some of them will almost inevitably arise upon retrial we discuss them briefly here.

2. Admission of extra-judicial statements as evidence. The defendant complains of admission in evidence of two statements made by the witness (and orig-

[1] Count 1 charged conspiracy in violation of sections 35(a) and 37 of the United States Criminal Code, 18 U.S.C.A. §§ 80, 88 [now §§ 287, 371, 1001]. Counts 2 to 6 inclusive charged substantive violations of section 35(a) of the Code, 18 U.S.C.A. § 80 [now §§ 287, 1001].

[2] Gilleland v. United States, 5 Cir., 1943, 139 F.2d 73, certiorari denied Burt v. United States, 1944, 321 U.S. 799, 64 S.Ct. 936, 88 L.Ed. 1087.

[3] Leroy v. Government of Canal Zone, 5 Cir., 1936, 81 F.2d 914; Paine v. People, 1940, 106 Colo. 258, 103 P.2d 686.

[4] In O'Shaughnessy v. United States, 5 Cir., 1927, 17 F.2d 225, 228, it was expressly held error to charge the jury that the guilty pleas of some of the defendants could be considered against the defendant who pleaded not guilty. See also United States v. Dewinsky, D.C.N.J. 1941, 41 F.Supp. 149.

inal co-defendant) McLaughlin to agents of the F. B. I. The subject was opened by defense counsel, after he had requested and obtained production of the statements, in his cross-examination of McLaughlin. McLaughlin had testified on direct examination that he turned over to the defendant some of the pay envelopes which were made out in false names. In his cross-examination at the trial McLaughlin testified that he had made a false statement to the F. B. I. on December 2, when he said he had turned over to the defendant all of the pay envelopes made out in false names. He testified further (still on cross-examination) that on December 11 he returned to the F. B. I. and made another statement to the effect that he had turned over to the defendant only some of those pay envelopes and kept the rest. McLaughlin admitted expressly that he had perjured himself in making the statement of December 2. The United States Attorney then submitted both statements in evidence. The Trial Judge admitted them over objection. He charged the jury that they were not to be used as evidence against Toner and limited their use "* * * to see whether or not he [McLaughlin] did contradict himself or whether or not he can be believed as a witness in this case, * * * it is only to impeach or support the truthfulness of the witness on the stand."

We think the documents were improperly admitted even though their use was limited by the twice repeated caution the Judge gave the jury. McLaughlin had already admitted several times that he had lied in his statement of December 2. The statement of December 11 could only serve to show that he said the same thing then as he said at the trial, i. e., that he turned over some (instead of all) of the pay envelopes to Toner. A prior consistent statement by a witness adds nothing to the probative value of his testimony at the trial. 2 Wigmore, Evidence § 1125 (3d ed. 1940). If McLaughlin told the truth at the trial he may very well have told it December 11. If he lied at the trial his state-

ment of December 11 only shows that he lied consistently.

Moreover, as to the conduct of the defendant both statements were hearsay. They contained complete narratives of what McLaughlin said to an investigator was Toner's conduct in connection with false payroll numbers. The only substantial difference between them concerned the single question whether McLaughlin had turned over all or only some of the envelopes to the defendant. Under these circumstances the submission of both statements to the jury could only have the effect of supporting twice over in writing the oral testimony at the trial concerning Toner's alleged payroll padding activities. They should not have been admitted.[5] We need not decide whether their admission under the limitation placed on their use by the court would alone be sufficient to establish reversible error for we have already pointed out our reasons why there must be a new trial.

3. Privilege against self-incrimination and the right to cross-examination. This point is the most interesting legal one presented by the appeal. The prosecution called a witness named McCarthy who had been engaged in the same enterprise with which McLaughlin and the defendant were associated. McCarthy came in by subpoena. He responded to questions asked by the prosecutor. When the defendant's counsel took the witness for cross-examination he answered some of the questions asked him but others he refused to answer on the ground that to answer would tend to incriminate him. The Trial Judge sustained the witness in this refusal.

Defendant says this deprived him of his constitutional right to cross-examine. He says that McCarthy, having given his testimony for the prosecution, should have been compelled to have his credibility tested by searching cross-examination, and this cross-examination could not proceed when the witness put up the shield of self-incrimination as a protection against questions asked him.

---

[5] See United States v. Michener, 3 Cir., 1945, 152 F.2d 880; United States v. Dressler, 7 Cir., 1940, 112 F.2d 972. Cf. United States v. Ward, 3 Cir., 1948, 169 F.2d 460, 462; United States v. Brandenburg, 3 Cir., 1946, 155 F.2d 110, 113.

Defendant also makes two other points concerning this question. One is that McCarthy had waived his privilege against self-incrimination because he answered questions put to him on direct testimony. The other point defendant makes is that if the cross-examination was to be blocked by the interjection of the self-incrimination privilege, then the testimony given by McCarthy on direct examination should have been stricken and the jury instructed to disregard it. Defendant admits that he did not move to have the testimony stricken at the trial, but says that free cross-examination is such a basic right that he is entitled to be protected in it under the "plain error" provision of the present rules. Federal Rules Criminal Procedure, rule 52(b), 18 U.S.C.A.

No error was committed by the Trial Judge with regard to this matter. There are several reasons supporting this conclusion and, since the point is of some importance, we set them out in order.

(a) Questions where the witness was protected in refusing to answer were related to matters remote from the subject-matter of this prosecution. The witness was being asked about other matters having to do with his statements to the grand jury and other things in connection with his conduct in this enterprise and the investigation thereof. The questions had no relevance to the subject-matter testified to by the witness on direct examination. Counsel pressed upon the court the point that he was entitled to go into collateral matters to test credibility. The court replied that the matters being inquired into were too remote. The scope of cross-examination lies pretty largely within the discretion of the Trial Judge.[6] We think his rulings here might well be sustained on this ground without any reference to the privilege of self-incrimination at all. It will be noted in the Appendix accompanying the briefs in this case that the direct examination of this witness took 8½ pages;

the cross-examination took exactly twice that much. The number of questions to which objection was made and the witness excused from answering was only five. We do not think that the record shows an undue restriction of the defendant's undoubted right of cross examination.

(b) The rulings were right with regard to self-incrimination. No one disputes the existence of the privilege of a witness to be protected against giving answers which will incriminate or degrade him.[7] The privilege can be waived. The problem of waiver may become difficult.[8] But there is no waiver here. This witness could not have refused to answer questions which did not incriminate him, and the questions asked in direct examination did not. He was entitled, therefore, to set up his privilege when the occasion arose. And he did.

(c) It is doubtful whether this would have been a case for striking out the direct testimony. In any event, no motion was made to do so and we disagree with defense counsel that the case was one of plain error. The general rule is given by Wigmore as follows: "Where the witness, after his examination in chief on the stand, has refused to submit to cross-examination * * * his direct testimony should be struck out."[9] But as pointed out by the Sixth Circuit, the rule is subject to the limitation that "on the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result."[10]

(d) Finally, it is not at all clear that the defendant preserved any objection to the Trial Judge's rulings which excused the witness from answering. His counsel asked the general privilege of putting questions "to impeach this witness." The court responded that counsel could ask any questions he pleased and the court would rule on objections if they arose. The examination proceeded thereafter with the

[6] 3 Wigmore, Evidence §§ 944, 983, 1002 (3d ed. 1940).

[7] 8 Wigmore, Evidence § 2250 et seq. (3d ed. 1940).

[8] United States v. St. Pierre, 2 Cir., 1942, 132 F.2d 837, 147 A.L.R. 240; 8 Wigmore, Evidence § 2276 (3d ed. 1940).

[9] 5 Wigmore, Evidence § 1391 (3d ed. 1940).

[10] Stephan v. United States, 6 Cir., 1943, 133 F.2d 87, 97.

witness, in the instances mentioned, raising his question of privilege and receiving court protection, apparently with the acquiesence of all concerned. We think the acquiescence at the time was the better advised view of the law than the one subsequently raised on appeal.

4. Expert testimony of Shea and Corry. The defense complains that the admission of this testimony was error. Joseph E. Shea, an auditor of five years' experience with the United States Maritime Commission and one year's experience in auditing stevedore contracts in the Philadelphia area, testified as to what expenditures were normally allowed as direct labor. He indicated that the purposes for which the defendant claimed to have expended the money received for the allegedly fictitious payroll numbers would not have been allowed on audit as direct labor expense. Alfred Corry, an assistant operating manager with eleven years' experience as an employee of Moore-McCormack Steamship Company, testified as to the meaning in the trade of "stevedore" and other waterfront labor terms.

We think that the testimony of both witnesses was pertinent to the issues concerning the propriety of the expenditures of funds which the defendant claimed to have made. Both witnesses were qualified to testify as they did.[11]

5. Sufficiency of evidence, judicial remarks, etc. Appellant challenges the sufficiency of the evidence to sustain a conviction. We think the evidence is enough if it is believed. The jury believed it and the defendant had his chance to try to convince them that they should not do so.

Defendant also makes the point that the Trial Judge was prejudiced against him and the prosecuting attorney made improper remarks. We do not think that either point has merit in it. Indeed, the matters of which the defendant complains are so far away from constituting prejudice in this respect that we do not think discussion is called for.

For the reasons given above, however, the judgment of the District Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

[11] See Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 1945, 150 F.2d 394, 400, certiorari denied 1945, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473; Phillips Petroleum Co. v. Payne Oil Corp., 10 Cir., 1944, 146 F.2d 546, 547.