**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Lawrence WILCHER, Defendant-Appellant.**

No. 14381.

United States Court of Appeals Seventh Circuit.

May 20, 1964.

James Lawrence Miller, James G. Strawbridge, Indianapolis, Ind., for appellant.

Richard P. Stein, U. S. Atty., Robert W. Geddes, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

This action was initiated by a two-count indictment which in Count I thereof charged that defendant-appellant, Lawrence Wilcher, unlawfully had in his possession, knowing them to be stolen, "a number of John Deere farm tractors of a value in excess of $100.00 each, to

wit: $4,000.00, more or less each," part of, and stolen from, an interstate shipment of freight from Waterloo, Iowa to Russellville, Alabama.

Count II charged Engbert John Terpstra in identical terms. Only the date of the offense was different, Mr. Wilcher being charged with possession on May 13, 1962 and Mr. Terpstra on May 16, 1962.

Defendant's motions to dismiss the indictment and for severance were both overruled prior to trial. Shortly prior to trial, Mr. Terpstra pleaded guilty. Although he was not tried with defendant-appellant, Mr. Terpstra was an important witness at the trial. The jury brought in a verdict of guilty. Defendant was sentenced to serve three years and to pay a fine of $2,000.

At the trial, Robert Dale Wilson, a truck driver for Ringle Express, Inc., testified that in Waterloo, Iowa, he picked up a load of five John Deere farm tractors consigned for shipment to the Felton Implement Co. at Russellville, Alabama. He was authorized to layover in Indianapolis, Indiana, en route, during the New Year holiday. On December 30, 1961, he left his trailer load of farm tractors at a service station. When he checked on December 31, 1961 and on January 1, 1962, Mr. Wilson found the tractors still there. When he arrived at the station on January 2, 1962, however, neither the trailer nor the tractors could be found. He testified that he did not take the load or authorize anyone else to do so.

In May, 1962, the same five tractors were seen in the possession of the defendant in Greensburg, Indiana. Defendant stated that they were offered to him by three men. He acted as middleman for them in two sales of the tractors to Mr. Terpstra. He delivered two tractors to Mr. Terpstra on May 13, 1962 and the remaining three on May 16, 1962.

Mr. Terpstra testified that he paid defendant $2,000 (for two of the tractors) and $3,900 (for the remaining three); that the defendant told him the tractors were "warm" and that "nobody would find them in the hills." He testified fur-

ther that he subsequently disposed of the three tractors evidently those referred to in Count II which charged Mr. Terpstra alone, in a trade for dairy cattle. These three tractors ultimately came into possession of a purchaser who checked with the John Deere dealer in Clayton, Indiana. It was ascertained that these were the same tractors which Mr. Wilson had temporarily left at the service station in Indianapolis.

Federal Bureau of Investigation Agent Raymond A. Tennyson testified that defendant admitted to him that he had told Mr. Terpstra that the tractors appeared to be "hot," first because the individuals who sold them had no bills of sale at the time of the transaction; and although, the tractors were allegedly being sold because of damage in shipping, they were in fact only slightly damaged and were being sold for substantially less than their value. Defendant himself testified that he had told Mr. Terpstra only that it was a "funny deal" and that the tractors "could be warm."

Defendant attacks the indictment as defective in failing to allege:

(1) ownership of the goods stolen; (2) identity of the specific carrier or custodian from which said goods were stolen; (3) any description of the vehicle from which the goods allegedly were taken; (4) the place from where the subject tractors were removed (as distinguished from the venue where the crime of "receiving" the stolen property was laid); and (5) a description of the tractors stolen; the complete ommission (sic) of which prejudiced the accused in preparation of his defense; and would be prejudicial to defendant-appellant in a plea of prior adjudication in a subsequent prosecution.

Error is charged in admission of documentary exhibits which described the tractors as "stolen" although those who made up the documents had no first hand knowledge that the tractors had in fact been stolen. Defendant also contends that the government failed to prove that the tractors were stolen from interstate

commerce or that defendant had knowledge of their character as stolen property.

We will not discuss these alleged errors because in our opinion failure to sever the two counts of this particular indictment for trial constituted such prejudicial error as to require reversal and remand for a new trial.

As indicated, each defendant was named in a separate count. No connection between the two offenses, which were described as occurring on separate dates, was alleged.

As Mr. Terpstra had pleaded guilty, defendant's counsel at the outset of the trial asked whether the indictment as set out in the instructions to be given would include only the one count charging defendant. The Court at that time said:

"So far as I know, we will allude to only the one Count. * * * and I have no knowledge of what the evidence will show."

With specific reference to the plea of guilty to the second count which did not concern defendant, his counsel asked:

"In the event a specific question were put to a witness relative to the fact that Mr. Terpstra has changed his plea. If that point—"

and was told:

"The Court: Well, now, that would not be admitted. I would certainly feel that that would be highly prejudicial."

and:

"The Court: All I can say is that I feel that the Court realizes what would or would not be prejudicial to a defendant on a trial. I hope the Government does. * * *

"Because there is a limit to which you can go in prejudicing a defendant on trial. By repeated references to things in an indictment which are not in issue at the time. * * *

"And here the one count as to Terpstra is no longer in issue. And is irrelevant at the present time."

Later when Mr. Terpstra was called as a witness, the following occurred on direct examination:

"Q. Now are you the same Engbert John Terpstra who is named in an indictment which bears Cause No. Indianapolis 62 Criminal 197 in this court?

"A. Yes, sir.

"Q. And you are charged in Count 2 of that indictment, is that right?

"A. Yes."

Defendant's counsel immediately objected as follows:

"May it please the Court: I would move that that answer be stricken because I was on my feet but he had answered it before I had a chance to place my objection.

"I would object to the question for the reason that the Cause 62-Cr-197 is a one-Count indictment, United States of America against Lawrence Wilcher, and that the allegation that there is a Count 1 or Count 2 is certainly not pertinent to the issues of—that there was a Count 2 is not pertinent to the issues that there is a trial here of the issues relating to Count 1 only.

"The Court: I would sustain that objection."

Nevertheless, the prosecutor continued as follows:

"Q. How did you plead to this indictment, Mr. Terpstra? .

"A. Guilty."

Defendant's counsel objected further, contending that this examination constituted grounds for mistrial.

Out of the presence of the jury the following colloquy occurred:

"The Court: The Court was under the impression that there would be no reference made to his plea; that that was the understanding before the bench—

"Mr. Kutch [the prosecutor]: I did not say that I would go any fur-

ther than just that, your Honor. That's all.

"The Court: That seems to be far enough."

Counsel for the government later explained that:

"Now, the only purpose of this questioning today was to qualify this witness as having been connected in some way with this entire tractor deal. That's the only purpose at all."

The Trial Judge made it clear that he did not think that the government was going to elicit or bring out the question of the plea of guilty according to the understanding between the Court and the counsel before the trial commenced. The Trial Judge attempted to rectify the matter by instructing the jury:

"Members of the Jury, the Court has overruled the Defendant's motion to strike the evidence from the record. The Court has likewise overruled the Defendant's motion for a mis-trial.

"And in view of this development it is incumbent upon the Court to give you a cautionary instruction as to how you shall treat the testimony of this witness with respect to the fact that he has entered a plea of guilty to a count in an indictment wherein he was charged with having committed the offense charged in the count of that indictment.

"I don't recall whether the essence of the charge was related or not in the question. I'd have to have the record checked back on it. But be that as it is, the reason the Court has overruled the motion to strike the testimony from the witness that he has entered a plea of guilty—and I should say to the offense of having committed the theft from interstate shipment—this testimony should not in any way have any bearing upon the minds of the Jury with regard to the guilt or the innocence of the Defendant now on trial. The Defendant on trial is charged with having had possession, knowingly, of tractors stolen out of interstate commerce. The Defendant on trial is not charged with having stolen the tractors.

"The Government would have the right to offer this witness' testimony, but I caution the Jury that it should be accepted carefully, and carefully scrutinized by the Jury with respect to the issues with which we are here concerned, and that is the trial of the Defendant on trial, namely, Mr. Wilcher. Lawrence Wilcher.

"In short, the Court must allow this evidence to go into the record; to allow the Jury to determine what weight, or what credibility, you will give his testimony. And not as it relates to the guilt or innocence of the Defendant, in the count of the indictment with which he is charged.

"Now it hasn't reached the point where there was actually testimony as to a single indictment. Separate counts. But in view of this development it appears to be incumbent upon the Court to explain to the Jury that there was a single indictment against two individuals, in separate counts. One charging the offense of theft out of interstate commerce; the other charging the Defendant here on trial with having had possession of merchandise out of interstate commerce. Stolen out of interstate commerce. Knowing— and that is the essence of the crime —knowing that the same was stolen, out of interstate commerce."

The Court almost immediately corrected the misstatement of the offense to which Mr. Terpstra had pleaded guilty, adding:

"It's possession; not theft. The Court stands corrected on that. The count to which the defendant—or the count to which the witness entered a plea of guilty charges that 'On or about May 16, 1962 at Decatur County, Indiana, in the Indianapolis Division of the Southern District of Indiana, Engbert John Terpstra did

unlawfully have in his possession certain goods and chattels stolen from a vehicle and which were part of an interstate shipment of freight, to wit, a number of John Deere farm tractors of value in excess of $100 each, to wit, $4,000 more or less, which farm tractors were part of an interstate shipment of freight from Waterloo, Iowa to Russellville, Alabama, knowing the same to have been stolen.'

"Again I repeat: The Court stands corrected; he was not charged with having stolen the tractors, he was charged with having had possession of the tractors.

"Now, I come back to the same problem: The Court is concerned that the Jury pay careful attention to the cautionary instruction, and that is the fact that this witness, who was charged in the same indictment in a separate count, has entered a plea of guilty, should not in any way bear upon your minds with regard to the guilt or innocence of the defendant now on trial who was charged in a separate count with the same or similar offense.

"So I ask that you weigh this very carefully, and very conscientiously, with regard to the Defendant now standing trial."

Unfortunately, a considerable part of the evidence introduced by the prosecution related to the three tractors embraced in Count II.

Subsequently, in his charge to the jury, the Trial Court found it necessary to read the second count, although he did caution the jury that it was not involved in the trial. Copy of the whole indictment incorporating both counts went into the jury room. The jury were told that they were not to be concerned with any verdict as to Mr. Terpstra and that his plea of guilty should in no way be held against the defendant.

In instructing the jury with respect to the competency of witnesses, the District Court again referred to the plea of guilty:

"Testimony has been introduced in this case through Engbert John Terpstra, who was named in Count II of the indictment and who had previously entered a plea of guilty to the charge alleged against him in the second count in the indictment. The law admits testimony by such a person as competent, and the mere fact that he participated in the wrongdoing, or offense, as charged in Count II of the indictment, to which he has entered a plea of guilty, does not destroy his competency to speak the truth, * * * ".

Thus, in one way or another, the jury was constantly being reminded of the plea of guilty to the second count. We cannot say that the prejudicial effect of the evidence of Mr. Terpstra's plea of guilty was cured by the subsequent instructions given to the jury. There was no allegation of connection between the two offenses in the separate counts of the indictment. The joint indictment charged crimes which were several in nature. There was no charge of conspiracy. See United States v. Toner, 3 Cir., 1949, 173 F.2d 140; United States v. Sprengel, 3 Cir., 1939, 103 F.2d 876, 882.

We do not believe that defendant has had a fair trial because of the persistent interjection of the irrelevant second count, and the plea thereto, by the prosecution. The Court's commendable efforts to remedy the damage, which obviously took the Court by surprise in the light of the prior understanding, were doomed to failure under the circumstances of this case. Denial of the motion to sever in this case resulted in reversible error. United States v. Haupt, 7 Cir., 1943, 136 F.2d 661, 672.

Reversed and remanded for a new trial.