**BISACCIA, Robert, Appellant,**

v.

**The ATTORNEY GENERAL OF the STATE OF NEW JERSEY.**

**No. 79–2040.**

United States Court of Appeals, Third Circuit.

Argued March 17, 1980.

Decided June 12, 1980.

---

Allen C. Marra (argued), Millburn, N. J., for appellant.

John J. Degnan, Atty. Gen., Trenton, N. J., Donald S. Coburn, Prosecutor, Essex County, Steven J. Kaflowitz (argued), Asst. Prosecutor, Essex County, Newark, N. J., for appellee.

Before SEITZ, Chief Judge, HIGGIN-BOTHAM, Circuit Judge and SIMMONS, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a denial of a petition for a writ of habeas corpus. The district court held that the appellant had failed to satisfy the "exhaustion of state remedies" requirement of 28 U.S.C. § 2254(b) and had failed to demonstrate a constitutional violation as required by 28 U.S.C. § 2254(a). We disagree with both of these conclusions and therefore will reverse.

### I.

The appellant, Robert Bisaccia, was convicted in a New Jersey state court along with three co-defendants of conspiracy, entering with intent to steal, and larceny of goods of value in excess of $500. During the trial, the prosecution presented the testimony of a co-conspirator, Joseph Cicala, who testified about his own plea of guilty to a charge arising out of the alleged conspiracy. Over defense counsel objections, the trial judge permitted the introduction of this testimony as to the guilty plea without requiring the prosecutor to explain its purpose and without cautioning the jury that evidence of this nature could not be used as substantive proof of the existence of a conspiracy. In his summation, the prosecutor additionally sought to impress the jury with the significance of the guilty plea by stating:

[A] young man named Joseph Cicala *pleaded guilty* to conspiring to break, en-

* Honorable Paul A. Simmons, United States District Judge for the Western District of Pennsylvania, sitting by designation.

ter and commit larceny inside the Bruno home. They [the defendants] said it never happened, you see. Mr. Cicala *pleaded guilty* to something that didn't happen.

Ladies and gentlemen, isn't your intelligence being insulted by an argument like that? I mean, aren't these defendants talking down to you as if you were a bunch of five year old children?

*Quoted in State v. Stefanelli*, 153 N.J.Super. 452, 458, 380 A.2d 276, 279 (1977) (emphasis added). Bisaccia appealed his conviction, along with his co-defendants, to the Appellate Division of the New Jersey Superior Court. In his brief, Bisaccia alleged numerous grounds for reversal, among them the introduction of the Cicala guilty plea without limiting instruction and the prosecutor's subsequent comments. He argued that the cumulative effect of these errors impermissibly prejudiced his case:

An accused is not entitled to a trial perfectly free from all error, but he is entitled as a *constitutional* right to a fair trial and it is respectfully urged that the manner in which the court below conducted this hearing did not begin to render the defendants a fair trial.

Brief to the New Jersey Superior Court, Appellate Division at 37, *reprinted in* App., at 44a (emphasis added) (hereafter Appellate Division Brief).

The Appellate Division agreed with the appellant's attack on the unrestricted admission of the guilty plea, finding that "[i]t is fairly apparent that the testimony of Cicala with respect to the guilty plea was used for the purpose of impressing the jurors of the existence of the conspiracy." 153 N.J.Super. at 459, 380 A.2d at 279. On the basis of the "prejudicial error inherent in the admission of such testimony," the Appellate Division concluded that the trial court " 'deprived the defendant of a very substantial protection to which he was entitled.' " *Id.* at 459, 380 A.2d at 279, 280, *quoting United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949).

The New Jersey Supreme Court then granted certification on the issue of the guilty plea testimony. The court addressed the appellant's constitutional argument in terms of the Sixth Amendment confrontation right and, because of the availability of cross-examination, found no violation. While finding that the trial court erred in failing to issue cautionary instructions to the jury regarding the testimony, the court held nevertheless that the error "did not have a clear capacity to produce an unjust result" and was harmless. *State v. Stefanelli*, 78 N.J. 418, 437, 396 A.2d 1105, 1114 (1979). The question of harmless error was answered in terms of New Jersey evidentiary law. Bisaccia's conviction was reinstated. His habeas corpus petition to the district court was denied and this appeal followed. The district court based its denial of the habeas corpus petition on the grounds that the appellant failed to exhaust his remedies in the state court system and that the error alleged did not violate the United States Constitution. We disagree.

## II.

The requirement, embodied in 28 U.S.C. § 2254(b), that state remedies must be completely exhausted before federal courts will grant habeas corpus relief is well settled.[1] *Ex Parte Royall*, 117 U.S. 241, 253, 6 S.Ct. 734, 741, 29 L.Ed. 868 (1886). The United States Supreme Court has more recently articulated a standard for determining what constitutes sufficient exhaustion. In *Fay v. Noia*, 372 U.S. 391, 428, 83 S.Ct. 822,

---

1. The relevant statutory provisions are 28 U.S.C. § 2254(a) & (b) and provide as follows:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

9 L.Ed.2d 837 (1963), the Supreme Court held that a "federal claim must be fairly presented to state courts." In determining what constitutes a fair presentation, the Supreme Court has required that the claim presented to the state court be the "substantial equivalent" of the claim asserted in a federal habeas corpus petition. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). The Court in *Picard* carefully noted that "[w]e do not imply that respondent could have raised the [constitutional] claim only by citing 'book and verse on the federal constitution'. . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts." *Id.* A determination of whether the substance of the appellant's claim was advanced in the state proceedings requires "a searching scrutiny by the federal habeas court of the points that were raised in the state tribunals, in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts." *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976) (en banc).

The district court found Bisaccia's presentation of issues to the New Jersey courts dissimilar to those presented in his petition for federal habeas corpus. It held that he failed to present his constitutional arguments to the state courts and thus the state courts did not have a fair opportunity to consider the constitutional implications of the trial court's error. The district court opinion notes that the only "constitutional" reference made by appellant before the New Jersey courts was the "cryptic" argument that "he is entitled as a constitutional right to a fair trial." Appellate Division Brief, App., at 44a. The appellee further points out that not even the *federal* constitution was specified by the appellant. Moreover, it is suggested that this vague reference addressed not only the issue of the use of the guilty plea but also the alleged bias of the trial judge and the violation of the rules of pretrial discovery. In support of its contention that the appellant's claim was not fairly presented, the appellee relies on *Wilson v. Fogg*, 571 F.2d

91, 94 (2d Cir. 1978), which held that the failure to raise a constitutional violation altogether, but with a citation to cases addressing a particular issue in constitutional terms, "hardly amounts to providing the state courts with the 'fair opportunity' to weigh the constitutional claim required by *Picard* . . . ." Although these arguments are not totally without merit, we nevertheless conclude that the appellant's broadly alleged constitutional argument, together with the repeated assertion that he was denied a fair trial, is enough to satisfy the exhaustion requirement. In *Zicarelli v. Gray*, this court noted that in order to determine whether the "same claim" or the "subsequent equivalent" of the claim has been previously presented to the state courts, it is necessary to ask whether the "method of analysis" asserted in the federal courts was readily available to the state court. 543 F.2d at 472.

In reversing the appellant's conviction, the Appellate Division, relying on *United States v. Toner*, 173 F.2d 140 (3d Cir. 1949), explicitly concluded that Bisaccia's trial was so wrought with unfairness as to require setting aside the verdict of the jury. "Because of the error . . . relating to the testimony of Cicala with respect to his guilty plea to the conspiracy charge, we find defendants to have been prejudiced to the extent that they were denied a fair trial." 153 N.J.Super. at 460, 380 A.2d at 280. While the Appellate Division did not cite to the Fourteenth Amendment in its reversal, its "method of analysis" was consistent and synonymous with the classic findings required for Fourteenth Amendment due process violations:

It is fairly apparent that the testimony of Cicala with respect to the guilty plea was used for the purpose of impressing the jurors of the existence of the conspiracy. After all, an individual would not plead guilty to a conspiracy that did not exist. *We believe even the inference to be drawn from this testimony created prejudice which had to affect the outcome of the trial.* In addition, no limiting instruction was given by the trial

judge so that the jurors were permitted to use Cicala's testimony as they pleased. 153 N.J.Super. at 459, 380 A.2d at 279 (emphasis added).

Although the New Jersey Supreme Court majority apparently believed there to be no such unfairness, it nevertheless pursued a method of analysis consistent with Fourteenth Amendment due process determinations:

> [A] guilty plea of one person as such cannot be considered satisfactory or worthy evidence of the guilt of others even though similarly circumstanced and is properly excludable under the axiom that a defendant on trial is entitled "to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *United States v. Toner, supra* at 142; *Babb v. United States, supra* [218 F.2d 538] at 542 [5th Cir.]. Hence we conclude, as did the court below, that Cicala's guilty plea was inadmissible as substantive evidence of the guilt of the defendants.

78 N.J. at 433, 396 A.2d at 1112. Although it followed this analysis, the court concluded that "the error did not have the clear capacity to produce an unjust result and that it had a minimal effect on the outcome of the trial." *Id.* at 437, 396 A.2d at 1114. The dissent by Justice Pashman unequivocally states that the evidentiary admission violated fundamental fairness:

> It is *patently unfair* to subject a defendant to criminal sanctions merely because his alleged co-conspirator has not elected to stand trial. In effect, the guilty plea evidence cannot be introduced because its relevance is far outweighed by its potential prejudicial impact upon the jurors' deliberations.

*Id.* at 441, 396 A.2d at 1116 (emphasis added). Justice Pashman's statement that the

trial was "patently unfair" is a description similar to the traditional characterizations used to assess purported Fourteenth Amendment due process violations. As Justice Frankfurter stated:

> Due process of law, as a historic and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend "a sense of justice."

*Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). A trial which is "patently unfair" surely offends the "sense of justice" that Justice Frankfurter described as an element of due process.[2]

Particularly in view of Justice Pashman's finding that the admission of the evidence was "patently unfair," thereby casting his dissent in constitutional language, this is not a case, as with *Wilson* or *Picard*, where the state courts had no indication of constitutional infirmity. Nor does *Zicarelli* undercut the appellant's position. In that case, a state prisoner alleged that his constitutional rights were violated when he was tried by a jury selected from residents of a county other than the one in which the alleged crimes were committed and that he was denied his right to trial by a jury comprising a representative cross-section of the locale where the crimes took place. This court concluded that the defendant had failed to exhaust his state remedies by merely transmitting a letter to the New Jersey Supreme Court highlighting a California case which discussed the cross-section issue and by making further reference to the decision at oral argument. Although *Zicarelli*'s state court briefs addressed the venue issue, they ignored the cross-section claim. Thus, Judge Adams, writing for the court, concluded that "[s]uch an arrangement hardly seems to conform to the Supreme Court criteria of 'fairly presenting' an issue. Nor does it appear to satisfy the

---

**2.** As the late Chief Justice Warren wrote in dissent in *Spencer v. State of Texas*, 385 U.S. 554, 570, 87 S.Ct. 648, 657, 17 L.Ed.2d 606 (1967):

> [T]he criteria for decision in procedural due process cases are necessarily drawn from the traditional jurisprudential attitudes of our legal system rather than from a relatively specific constitutional command.

comity rationale that undergirds the exhaustion rule." 543 F.2d at 474–75.

 Because the substance of the appellant's state claim is virtually indistinguishable from the due process allegation now before the federal court, and because the method of analysis is indistinct, the *Picard* test for exhaustion of state remedies has been met. This conclusion is especially appropriate because of the necessarily vague nature of a due process allegation. Failure to invoke the Due Process Clause more specifically should not therefore stand in the appellant's path to habeas relief, especially since the state courts understood and considered the "substantial equivalent" of the appellant's claims before this court and the court below.

### III.

 It is a well-established principle that evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *United States ex rel. Perry v. Mulligan*, 544 F.2d 674, 678 (3d Cir. 1976), *cert. denied*, 430 U.S. 972, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). We next consider whether use of the co-conspirator's guilty plea rises to the level of constitutional proportions. If so, the appellant will have satisfied the requirements of 28 U.S.C. § 2254(a).

 It is well settled in this circuit that use of a co-conspirator's guilty plea as substantive proof of a defendant's complicity in a conspiracy without cautionary instruction is not admissible as evidence. *United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949). However, as the district court noted, the cases address this issue in evidentiary rather than constitutional terms. Indeed, the appellee urges that the error merely amounted to "evidentiary irrelevance." We nonetheless disagree. The use of such evidence is sufficiently unfair so as to raise the spectre of unconstitutionality

for purposes of habeas corpus relief. We ground this conclusion on the concept of fundamental fairness inherently required in every criminal trial. Judge Goodrich's eloquent statement in *United States v. Toner* is our starting point:

> From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore Evidence § 1171 *et seq.* (3d Ed. 1940)
>
> The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. We think that the charge given upon this point was contrary to that rule and inadvertently, of course, deprived the defendant of a very substantial protection to which he was entitled.

173 F.2d at 142. (footnotes omitted). Judge Goodrich's rationale in *Toner* is bottomed as much on concepts of constitutional fairness as on concepts of "evidentiary" fairness. For the underlying purpose ultimately is to assure a criminal defendant that his guilt or innocence will be "determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *Id.* The inherent unfairness and likely prejudice of such evidence in this case

challenges our concept of due process. The Seventh Circuit, in addressing the practice of introducing evidence of other, related crimes, has noted:

> When it must be said that the probative value of such evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law.

*United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974), *quoting United States ex rel. Durso v. Pate*, 426 F.2d 1083, 1086 (7th Cir. 1970). Under the circumstances here, the admission of the co-defendant's guilty plea, the failure of the trial judge to give cautionary instructions to the jury about this evidence and the prosecutor's comments on this evidence so exceeded the tolerable level of ordinary trial error as to amount to a denial of constitutional due process. As such, we hold that the appellant has satisfied the requirement of 28 U.S.C. § 2254(a).

### IV.

■ Since the appellant has exhausted all available remedies and since the error in this case may be viewed as a violation of the appellant's Fourteenth Amendment due process right, this case must be remanded for a determination of whether it was harmless error. In order for constitutional error to be found harmless, it must be "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The relevant question then is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963).

Applying the *Chapman-Fahy* test to the facts in this case, a district court might well conclude that use of the Cicala guilty plea as substantive evidence of Bisaccia's guilt without limiting instructions to the jury, coupled with inflammatory prosecutorial re-marks, might have contributed in some meaningful sense to the conviction. The district court found that even if the appellant had exhausted his state remedies, he failed "to demonstrate a constitutional violation by the trial court." Because we concluded above that a constitutional violation was demonstrated, the question remains whether under *Chapman* the error here was harmless. The case will be remanded for the limited purpose of making a finding on this latter issue.

### V.

For the foregoing reasons, the order of the district court dismissing the appellant's petition for a writ of habeas corpus will be reversed and remanded.

SEITZ, Chief Judge, concurring.

I agree with the majority that appellant's rights under the federal Constitution were denied when the state used a co-conspirator's guilty plea as evidence of his guilt. Therefore, I concur in the decision to reverse the order of the district court and to remand for application of the harmless error standard of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). I write separately because I believe that appellant was denied his sixth amendment right to be confronted with the witnesses against him. I would avoid invoking the due process standard of fundamental fairness.

The Supreme Court applied the confrontation clause to restrict a prosecutor's use of third-party convictions and guilty pleas in *Kirby v. United States*, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899). In a prosecution for receipt of property stolen from the United States, the government's proof of the fact of theft from the United States consisted of guilty pleas of three of the thieves and the conviction after trial of a fourth. The Court reversed the receiver's conviction, holding that he had not been "within the meaning of the Constitution,

confronted with the witnesses against him." *Id.* at 60, 19 S.Ct. at 579.[1]

It is important to note that the confrontation clause violation in *Kirby* did not result from the government's failure to confront the defendant with the persons who had pled guilty or had been convicted. The Court saw the effect of the government's use of third-party conviction records and guilty pleas as allowing the government to use its witnesses to prove facts incriminating to a defendant while not allowing the defendant an opportunity to challenge, impeach, and cross-examine those witnesses. In the absence of a restriction, the Court reasoned that the government might use its witnesses to establish facts necessary to convict a third person, either by presenting the witnesses at trial or by inducing a guilty plea, and might then offer the third person's conviction in its prosecution of the defendant as proof of the facts essential to sustain the earlier conviction. *Cf.* Fed.R. Evid. 803(22) (final judgment of conviction entered after trial or guilty plea admissible to prove facts essential to conviction).[2] At no point in this process would the government confront the defendant with the witnesses that it assembled in its prosecution of the third person. *See generally Kirby*, 174 U.S. at 55, 19 S.Ct. at 577.

In appellant's trial the state attempted to prove the existence of a conspiracy involving appellant by introducing a co-conspirator's guilty plea. In so doing, the state violated appellant's rights under the confrontation clause, as construed in *Kirby*.

The error was not avoided by the opportunity that appellant had to cross-examine the co-conspirator at trial. In *Kirby*, the Court addressed a defendant's right to confront not the third person who pleaded guilty but the witnesses that the government would have presented in a trial of the third person. We can have no assurance that appellant had an opportunity to confront those witnesses at his trial.

In this sense, confrontation in the circumstances of *Kirby* differs from the confrontation in the circumstances of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton* the Court prohibited the use of a codefendant's confession in a joint trial. There the Court addressed the right of a defendant to confront and cross-examine his confessing codefendant, a right which can be preserved when the codefendant testifies at trial and subjects himself to cross-examination. *See Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1970).

The appellant has presented his claim of a deprivation of confrontation rights to this court and to the district court in terms of a violation of *United States v. Toner*, 173 F.2d 140 (3d Cir. 1949). In *Toner*, this court ruled that the guilty plea of a co-conspirator was not admissible to prove the guilt of a criminal defendant. The opinion does not mention the confrontation clause specifically, and the court might well have rested its ruling on different or additional grounds, including nonconstitutional grounds.[3]

---

1. The statute at issue in *Kirby* provided that the conviction of the principal felons for theft of property from the United States was conclusive proof of the fact of theft in a subsequent prosecution of a receiver of the property. Act of March 3, 1875, ch. 144, § 2, 18 Stat. 479 (1879). The district court instructed the jury differently, charging them that the guilty pleas and conviction constituted *prima facie* proof. *See* 174 U.S. at 50–51, 19 S.Ct. at 575. The Supreme Court ruled that both the statutory standard of conclusive proof and the district court's modification violated the confrontation clause: "The fundamental error in the trial below was to admit in evidence the record of the conviction of the principal felons as competent proof for any purpose." *Id.* at 60, 19 S.Ct. at 579.

2. This rule of admissibility does not apply when a third-party conviction is "offered by the Government in a criminal prosecution for purposes other than impeachment." Fed.R.Evid. 803(22). The purpose of this exception is to avoid a conflict with the right of confrontation construed in *Kirby*. Fed.R.Evid. 803(22) (Advisory Committee's Note).

3. The opinion does address the same general concern addressed in *Kirby*: the use of third-party guilty pleas to prove facts against a defendant allows the government to rely on the establishment of facts in a proceeding in which the defendant did not participate. The court concluded, "The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *Id.* at 142.

Nonetheless, the ruling in *Toner* was mandated by the Supreme Court's construction of the confrontation clause in *Kirby.* Therefore, I read *Toner* as reflecting the requirements of the confrontation clause and recognize that appellant has stated a sufficient claim of a violation of his confrontation rights.

Because the majority and I rely on different constitutional claims, I must consider also whether appellant fairly presented the substance of his federal claim to the Supreme Court of New Jersey and thereby satisfied the requirement of exhaustion of state remedies. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971); *Zicarelli v. Gray,* 543 F.2d 466, 470–75 (3d Cir. 1976). The brief that appellant filed in the Supreme Court of New Jersey argues explicitly that the state's violation of *Toner* deprived him of rights under the sixth amendment. Moreover, the opinion of the New Jersey court discusses and rejects the suggestion that the rule in *Toner* reflects the requirements of the confrontation clause. *State v. Stefanelli,* 78 N.J. 418, 396 A.2d 1105, 1111–12 (1979). It is true that appellant did not present the New Jersey court with a citation of *Kirby* or with an argument incorporating *Kirby's* particular application of the confrontation clause. However, because that application of the confrontation clause derives from a reported opinion of the Supreme Court of the United States, it is a method of analysis readily available to the state court. Its specific citation was not necessary to satisfy the exhaustion requirement. *Zicarelli v. Gray, supra* at 472. I conclude that appellant has satisfied the exhaustion requirement.

The majority reads *Toner* as reflecting the requirements of the due process clause because its restriction on the government's use of third-party guilty pleas is an essential element of fundamental fairness. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Review of state convictions under a standard of fundamental fairness allows the

federal court to ensure that state criminal defendants do not suffer from trial errors that are inconsistent with the concept of justice implicit in the due process clause but are not prohibited by specific provisions of the Bill of Rights. The fundamental fairness standard is necessarily very general in its terms and not greatly restricted in its application by specific precepts and precedents. A court should not employ this standard when it can base a finding of constitutional error on a specific provision of the Constitution. In this case, the court's judgment can rest on a specific provision of the Bill of Rights and on a Supreme Court application of that provision to the particular circumstances of this case. Invocation of the fundamental fairness standard of the due process clause is unnecessary and best avoided.