BECKER, Chief Judge,
dissenting:
I am in full agreement with the reasoning and conclusion expressed by the principal dissent in this case — which would hold that the District Court erred in admitting evidence that the defendants’ co-conspirators had entered guilty pleas for their respective roles in the underlying healthcare fraud conspiracy — except insofar as that opinion disclaims reliance on Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). See Dissent at 682 n. 12 (Roth, J.). I am of the .opinion that Old Chief strongly supports the defendants’ position, and write separately to explain that view.
I read Old Chief as standing for three important propositions: First, it makes clear that defense stipulations, such as the assurances offered by the defendants in this case, are acceptable, if not favored or required, in certain limited circumstances. See Old Chief, 519 U.S. at 190-92, 117 S.Ct. 644. Second, it holds that the government’s general prerogative to prosecute its case as it sees fit must necessarily yield to the dictates of the Federal Rules of Evidence. See id. at 191, 117 S.Ct. 644. Third, it tracks the advisory committee notes to the Federal Rules of Evidence, and confirms that proffered evidence must not be analyzed as an island to itself (as the majority seems to do, here), but rather, compared to the availability of other means of proof on the same point. See id. at 184, 117 S.Ct. 644. Against this background, I believe that the case for allowing a stipulation in this case is even stronger than it was in Old Chief
In Old Chief, the defendant, charged with being a felon in possession of a firearm, had offered to stipulate to an element of the offense with which he was charged: having a prior felony conviction. The government refused to accept the offer, and over the defendant’s objection, it introduced evidence regarding the name and nature of the defendant’s underlying felony conviction. The Supreme Court held that the district court had abused its dis *684 cretion in admitting the evidence of the underlying conviction. The Court held that the defendant’s stipulation should have been received and that the government’s introduction of evidence should have been limited, notwithstanding the government’s general prerogative to choose its own evidence. See 519 U.S. at 190, 117 S.Ct. 644. The Court reasoned that it was proper to allow such a stipulation because the evidence regarding the name and nature of the prior felony conviction (assault causing serious bodily injury) failed the Rule 403 balancing test.
Although the name and nature of the offense were certainly relevant to prove that the defendant had been convicted of a felony, see id. at 178-79, 117 S.Ct. 644, the defendant’s offered stipulation was more probative evidence — in fact, it was conclusive evidence — that the element was established. See id. at 186, 190, 117 S.Ct. 644. The evidence regarding the name of the offense and the nature of the crime was therefore rendered surplusage, as it was less conclusive proof of the element, see id. at 186, 117 S.Ct. 644, and as it was neither necessary to help the government create a cohesive narrative about the crime charged, see id. at 190-92, 117 S.Ct. 644, nor “proper nourishment for the jurors’ sense of obligation to vindicate the public interest,” id. at 190, 117 S.Ct. 644.
The evidence regarding the name of the offense and the nature of the crime was also problematic because it posed a greater risk of undue prejudice than did the stipulation and an accompanying jury instruction. See id. at 191-92, 117 S.Ct. 644. Evidence of the prior conviction could be used by the jury to draw an improper character inference or could lead the jury to believe that the defendant was a bad person, deserving of punishment whether he was guilty or not. See id. at 181, 117 S.Ct. 644. Therefore, the Court held that the defendant’s offered stipulation should have been admitted, and the jury appropriately instructed on this issue. See id. at 192, 117 S.Ct. 644.
Here, the defendants offered to stipulate to a collateral matter — the content of their cross-examination — rather than an element of the offense that the government had the burden to prove beyond a reasonable doubt. The defendants promised that they would not assert a selective prosecution defense, and that they would not impeach the co-conspirators on the ground that they were biased because they had entered guilty pleas. The government has argued that it had the right to introduce evidence of the guilty pleas, even though the defendants promised not to pursue these lines of cross-examination, because jurors might independently reach the conclusion that the government had engaged in selective prosecution or that the co-conspirators were biased and were unduly shifting blame to the defendants.
The evidence that the government proffered — the co-conspirators’ guilty pleas— was surely relevant as tending to allay these juror concerns. See Old Chief, 519 U.S. at 188-89, 117 S.Ct. 644. But, given the context of the case, and when compared to alternative means of addressing those concerns, the government’s introduction of the guilty pleas, as with the government proffer in Old Chief, fails the Rule 403 balancing test. Once the defendants offered their stipulation, the probative value of the guilty pleas was greatly reduced: They no longer affirmatively rebutted a selective prosecution defense, and they no longer could be used to dampen subsequent attacks on credibility, as those attacks were no longer coming.
Moreover, the guilty pleas were not a necessary part of the “coherent narrative” of the case, a factor that would normally militate in favor of the government’s position. Old Chief, 519 U.S. at 192, 117 S.Ct. 644. United States v. Toner’s general rule makes clear that co-conspirators’ guilty pleas are normally inadmissible, see 173 F.2d 140, 142 (3d Cir.1949); hence it follows that such evidence need not necessarily be part of the government’s case in chief. Given the defendants’ stipulation, *685 the guilty pleas’ only probative force was their tendency to allay hypothesized suspicions in the minds of the jurors about why the government had chosen to prosecute the defendants, and about the credibility of witnesses who had participated in criminal activity with the defendants, but were not facing prosecution.
As Judge Roth ably demonstrates, the danger of unfair prejudice inherent in this evidence is great. The jurors could infer from the co-conspirators’ guilty pleas that the defendants must also be guilty if their co-conspirators were willing to plead guilty to such crimes. As in Old Chief, where the fear was that the name and nature of the defendant’s underlying felony conviction could mislead or over-persuade jurors by “lur[ing]” them to engage in a “sequence of bad character reasoning,” Old Chief, 519 U.S. at 185, 117 S.Ct. 644, the evidence of the co-conspirators’ guilty pleas carried with it the potential to deprive the defendants of their right to “stand or fall with the proof of the charge made against him,” Toner, 173 F.2d at 142.
When compared to the alternative way in which the jurors’ suspicions about co-conspirators’ guilty pleas could have been allayed, it is clear that, as in Old Chief, the defendants’ stipulation should have been accepted. As Judge Roth points out, the District Court could have instructed the jury that it should not concern itself with selective prosecution or what the co-conspirators were promised in return for their testimony. Instead, the District Court allowed the pleas to come into evidence and then gave a “Toner instruction” admonishing the jurors that they could not infer from the co-conspirators’ guilty pleas that the defendants were also guilty.
WTten one compares the probative value and danger of unfair prejudice inherent in these two scenarios, the former far better comports with the dictates of Rule 403 and the Court’s admonitions in Old Chief. Judge Roth’s suggested mode of presentation takes less time and is more direct. In her suggested mode of presentation, the judge makes definitively clear to the jury that selective prosecution and claims of bias are not at issue. Under Judge Roth’s theory, the danger of the impermissible Toner inference is avoided because the guilty pleas are not introduced. Lastly, and perhaps most importantly, this mode of presentation does not interfere with the government’s ability to present a “coherent narrative” regarding its case. Old Chief, 519 U.S. at 192, 117 S.Ct. 644. If anything, it forecloses the possibility that the jury will focus on a tangential and unimportant parts of the criminal “plot,” and it does so without depriving the jury of facts crucial to its understanding of the defendants’ criminal conspiracy. The defendants’ co-conspirators testified at length regarding the defendants’ myriad acts of health care fraud; understanding the means by which the defendants’ allegedly defrauded the government was in no way contingent upon the knowledge that the defendants’ co-conspirators pled guilty — they testified that they had witnessed these crimes first hand.
In contrast, the mode of presentation endorsed by the majority is far more circuitous and confusing because it addresses only a 'potential concern the jurors may have. The fact that the government elicits testimony regarding the guilty pleas does not mean that the jury will not conclude that selective prosecution or blame shifting were at issue. Additionally, the impermissible Toner inference could still be made, notwithstanding the instruction that jurors must not draw the inference.
The- majority attempts to bolster its position by stating that the defendants’ offer “to refrain from affirmatively challenging [their co-conspirators’] credibility did not, and could not, carry the same probative value on the issue of witness credibility as the introduction of [their] pleas.” Majority at 667. To me, at least, this argument makes no sense. If, complying with their offered stipulation, the defendants do not challenge their co-conspirators’ credibility and the District Court instructs the jury not to infer that the co-conspirators are *686 biased, their credibility on this point is unimpeached. There is no need for evidence, probative or not, on this point. The majority, instead, would have the government bolster the co-conspirators’ credibility before it is challenged with probative evidence — in contradiction to the admonitions in Rule 608, as Judge Roth points out — and then invite the defendants to attack the witnesses’ credibility on this issue. This takes far more time, is more likely to confuse the jury, and puts at issue a point, tangential to the trial, when it clearly need not be, especially when it carries with it the twin dangers of unfair prejudice. The Federal Rules of Evidence are grounded in truth, economy, and fairness, see Fed. R.Evid. 102; the majority’s approach seems to ignore these aspirations.
As in Old Chief, rather than present the jury with potentially unfairly prejudicial evidence and then instruct against an improper inference, the correct thing to do in this case was to accept the defendants’ stipulation and then to instruct the jury as to how to deal with the stipulation properly. In Old Chief, that meant making sure that the jury understood what the stipulation meant: that the government had definitively satisfied the felony status element in its felon-in-possession-of-a-firearm prosecution. Here, it should have meant instructing the jury that the defendants would not be asserting a selective prosecution defense or that the co-conspirator witnesses were attempting to receive a sweetheart deal by shifting blame to the defendants. Because the District Court did not proceed in this manner, I agree with my fellow dissenters’ conclusion that the District Court abused its discretion— in my mind, much as the district court did in Old Chief.