**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Lynch PATERSON,
Defendant-Appellant.**

**No. 85–1247.**

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1986.

H. Thomas Coghill and David J. Richman of Coghill & Goodspeed, P.C., Denver, Colo., for defendant-appellant.

William L. Lutz, U.S. Atty., and David N. Williams, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before BARRETT, SETH and McKAY, Circuit Judges.

PER CURIAM.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

This matter is before the court on defendant-appellant's application for bail pending appeal.

We have carefully examined the record and the papers submitted by the parties and conclude that the application for bail pending appeal should be denied.

McKAY, Circuit Judge, dissenting from denial of bail pending appeal:

The issue before this court is whether the defendant is entitled to bail pending appeal. He was charged with one count of conspiracy to distribute marijuana and one count of possession of marijuana. Following a jury verdict of guilty on the count of conspiracy to distribute marijuana, defendant was sentenced to fifteen years in prison. Thereafter, the trial court denied defendant's motion for bail pending appeal.

On defendant's first appeal from the trial court's denial of bail pending appeal, we remanded for consideration in light of our decision in *United States v. Affleck*, 765 F.2d 944 (10th Cir.1985) (en banc). The trial court duly considered the matter and again denied bail pending appeal. That court concluded that defendant presents a risk of flight, a danger to the community, and that his appeal does not raise a "substantial question."

I.

Whether the defendant has raised a substantial question on appeal which, if determined favorably to defendant, is likely to result in reversal or a new trial, is a question of law which this court must decide for itself. The principal issue raised by defendant on appeal concerns the fact that the government in its opening statement, in its closing argument, and through the testimony of its chief witness, sought to bolster its case by informing the jury that ten coconspirators—eight of whom did not testify at trial—had pleaded guilty to the charge of conspiracy.

*United States v. Baez*, 703 F.2d 453 (10th Cir.1983), is controlling on the issue whether defendant has raised a substantial question on appeal. In that case, the trial court informed the jury that a codefendant who had entered a guilty plea was expected to testify on behalf of the defendant. No objection was made to the court's comment. This court held that the trial court's comment to the jury constituted plain error, and we reversed even though the issue had not been presented at trial. Thus, *Baez* stands for the proposition that the use of a codefendant's guilty plea or conviction is plain error if it is used as substantive evidence of the defendant's guilt. Naturally, *Baez* recognized that, if the codefendant testifies at trial, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness. However, "[b]ecause of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *Baez*, 703 F.2d at 455.

The principle that a guilty plea or conviction of a coconspirator may not be offered by the government to establish a defendant's guilt is well settled. Indeed, the Third Circuit has ruled that the use of such evidence, in the absence of a cautionary instruction, may amount to a denial of due process. *Bisaccia v. Attorney General*, 623 F.2d 307, 313 (3rd Cir.), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). The rationale for the rule is eloquently stated in *United States v. Toner*, 173 F.2d 140, 142 (3rd Cir.1949):

From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of

the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore Evidence § 1171 et seq. (3d ed. 1940).

The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. (footnotes omitted).

The fact that, in this case, the government rather than the court made reference to the convictions of coconspirators is not a valid basis for distinguishing *Baez.* Indeed, the potential prejudice resulting from the use of such evidence is even greater where the coconspirator's conviction or guilty plea is made known to the jury through a witness' testimony. Unlike the situation in *Baez,* "[t]he fact that the guilty plea was predicated upon the witness' testimony accords it undeserved emphasis—in effect making the plea itself evidence." *United States v. Fleetwood,* 528 F.2d 528, 535 (5th Cir.1976).

In determining whether the admission into evidence of a coconspirator's guilty plea or conviction constitutes plain error, the court should consider the following factors:

the presence or absence of a limiting instruction; whether there was a proper purpose in introducing the conviction or guilty plea of the codefendant; whether the plea or conviction was improperly emphasized or used as substantive evidence of guilt; whether the alleged error was invited by defense counsel; whether an objection was entered or an instruc-

tion requested; whether the failure to object could have been the result of tactical considerations; and whether, in light of all the evidence, the error was harmless beyond a reasonable doubt.

*United States v. Miranda,* 593 F.2d 590, 594 (5th Cir.1979). *See also United States v. Edwards,* 716 F.2d 822, 825 (11th Cir. 1983).

Applying these principles to the facts of this case—without the benefit of the trial transcript—yields the conclusion that the issue involved in this appeal is clearly substantial. First, although the trial court's Order indicates that the court gave a limiting instruction of some kind, both defendant and the government state in their briefs that the court did not give a limiting instruction on this issue. Second, the government argues that the testimony concerning the convictions of coconspirators was not offered to prove Mr. Paterson's guilt, but "simply tended to enhance [the government witness'] credibility by showing his knowledge of the scope of the conspiracy from its inception through its final judicial determination." Appellee's Brief at 17. Certainly, this reason is not a proper basis for introducing such prejudicial testimony, because the witness' knowledge of the disposition of the charges against coconspirators does nothing to enhance his credibility. Third, the government improperly emphasized this evidence to the jury during opening statements and again during closing arguments. For example, during his closing argument, the prosecutor stated: "And you know that there was a conspiracy, if for no other reason besides the large number of personnel involved; ten of them have already been tried and convicted and two of them testified before you." Appellant's Brief at 15. Fourth, the government does not contend that the alleged error was invited by defense counsel. Fifth, although defense counsel did not object in each instance where the prosecutor or the government witness mentioned the convictions of coconspirators, defense counsel did object on one occasion, and the trial court overruled the objection and defense counsel's request for a mistrial. There-

fore, defense counsel's failure to object each time the government made some reference to the prior convictions of coconspirators could have been the result of tactical considerations. The government concedes this point in its brief, however indirectly, by stating, "It is submitted that Paterson's trial counsel made a tactical decision not to highlight the *potentially damaging convictions* in the jury's collective mind by singling out the convictions for emphasis during the instructions." (emphasis added). Appellee's Brief at 24. Perhaps without realizing it, the government has conceded that the testimony regarding the coconspirators' convictions was "potentially damaging," thus undercutting its argument that the admission into evidence of this testimony constitutes harmless error.

In *United States v. Bryza,* 522 F.2d 414, 425 (7th Cir.1975), *cert. denied,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), the Seventh Circuit observed:

> Guilty pleas of co-defendants should be brought to the attention of the jury in only certain narrow instances; i.e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other co-defendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the subject. (footnote omitted).

None of these situations appears to have been present in this case. The government repeatedly referred to the prior convictions of coconspirators *who did not testify at trial;* thus the evidence was not used to impeach a government witness' credibiity. Furthermore, this is not a case where coconspirators pleaded guilty during the trial so that it was necessary for the government or the court to explain their absence. Nor does it appear that defense counsel created the impression that the government had singled out Mr. Paterson for prosecution. The jury might have received this impression, however, since all of the coconspirators were named in the indictment that was read to the jury. But this potential problem could have been cured by simply allowing the government to bring out the fact that the coconspirators had been indicted, without informing the jury that they had been convicted. *Bryza,* 522 F.2d at 425.

In sum, I conclude that, under the guidelines set forth in *Affleck,* defendant's appeal presents a substantial question of law or fact which, if determined favorably to defendant, is likely to result in reversal or an order for a new trial.

## II.

In addition to concluding that defendant's appeal does not raise a substantial question, the trial court concluded that defendant presents a risk of flight and a danger to the community. Only defendant has elected to brief these issues. From the briefs and the record, the following facts are undisputed:

Charles Paterson was a resident of Miami, Florida, from 1978 through the date he was turned over to the U.S. Marshal following his conviction in this case. Mr. Paterson and his wife have been married since June 1973. They have twin daughters who were born in Florida and are U.S. citizens. Charles was born in Canada on September 23, 1950, and has been in the United States since September 1978. Although Charles has thought of himself as a Canadian citizen, his mother was born a U.S. citizen, and Charles has a technical claim to U.S. citizenship.[*]

Charles Paterson's father is the president of N.M. Paterson & Son, Ltd., a large grain-handling and shipping company headquartered in Winnipeg, Manitoba, Canada. The company owns and operates grain elevators in Canada and grain-carrying cargo ships which ply the Great Lakes. Charles Paterson's father, a sister, and two brothers are all active in the family business.

---

[*] On remand, the only testimony the government presented related to whether the defendant was a citizen of Canada. I conclude for purposes of review that he is a Canadian citizen.

His family in Canada are prominent and successful members of the business community in Winnipeg, Manitoba, and Thunderbay, Ontario. Were Charles Paterson to be released pending appeal, he too would be employed in the family business.

Charles Paterson graduated in 1973 from Bishops' University, Quebec, with a bachelor's degree in economics. From 1973 through 1975, he was the vice-president of Seagreen Air Transport, then a family-owned, air transport business located in Antigua, West Indies. In 1975, Mr. Paterson returned to school, earning a master's degree in business administration from the University of Western Ontario in 1977. Mr. Paterson was thereafter employed as a marketing service manager by Norcom Homes, Ltd., a Toronto-based manufacturer of mobile homes. In 1978, Mr. Paterson became the president of the newly-formed, family air transport business, Paterson Aircraft Corporation, located in Miami, Florida.

From 1978 to the time of his conviction, Charles Paterson was the president and major stockholder in Paterson Aircraft Corporation. The company was engaged in the business of operating, maintaining, and leasing cargo aircraft used in transporting freight in the Caribbean region. The company owned five planes; it employed approximately 30 persons in addition to Charles Paterson, and it contracted with approximately 15 pilots and flight engineers as independent contractors.

Prior to being indicted in the present case, Charles Paterson had no prior criminal convictions or arrests. Since his conviction in December 1984, Charles Paterson has been in the custody of the U.S. Bureau of Prisons. During his time in custody, Charles has been a model prisoner and has had no problems with the prison authorities. He is currently serving his sentence at the Federal Correctional Institute in Raybrook, New York. His designation to Raybrook was largely due to his possible claim to U.S. citizenship.

Because his wife is a Canadian citizen, and because her immigration status was derivative from her husband's, she was requested by the INS, in February 1985, to leave the United States because of the termination of her husband's visa resulting from his conviction. Mrs. Paterson moved with her children to a house in the Beaconsfield suburb of Montreal, Quebec, to comply with the INS's request, but also at the same time to be near her husband. The family house is within a two-hour drive of Raybrook, New York. If released on bail pending appeal, Charles Paterson would reside with his family in Beaconsfield and, as noted above, would be gainfully employed by his family's business.

The record also establishes that defendant has proved his willingness to abide by court decisions and directions. His history in that regard is as follows:

In the spring of 1983, Mr. Paterson was subpoenaed to appear before the grand jury to testify in the grand jury's investigation of the incident involving the seizure of marijuana at the Austin Ranch. On four days advance notice, Mr. Paterson traveled to Albuquerque, advancing his own travel expenses, appeared before the grand jury, and in accordance with his constitutional rights and as advised by his lawyer, he asserted his fifth amendment right not to testify. However, immediately after his appearance, Mr. Paterson voluntarily met with the Assistant U.S. Attorneys and DEA agents, and in an informal session answered their questions and provided information to assist the government in presenting its case against the individuals who had been arrested on Mr. Austin's ranch. Those ten individuals were indicted and brought to trial in June 1983.

Prior to the trial scheduled for June 1983, Mr. Paterson voluntarily met with DEA agents in Miami to discuss the pending case, and, on several occasions, he provided documents to the government pursuant to subpoenas served on Paterson Aircraft. He also cooperated with the government by making arrangements for Seagreen Air Transport to produce documents. At the trial in June 1983, Mr. Paterson appeared to testify upon the government's request. Again, he traveled to Albuquerque from Miami at his own expense. Mr.

Paterson cooperated with the government, met with the federal prosecutors before trial, and testified at the trial of the ten members of the ground crew.

Approximately thirteen months later, Mr. Paterson learned that another indictment had been returned by the grand jury, this time naming Mr. Paterson and several other defendants. Upon learning of the indictment against him, Mr. Paterson *did not flee*, as did several of the coindictees. Rather, he hired an attorney and presented himself before the district court for arraignment and entry of plea. The district court found that it was appropriate to release Mr. Paterson on an unsecured bond of $75,000. Thereafter, Mr. Paterson or his retained counsel appeared at each and every hearing and docket call of the district court. He appeared at the trial, each and every day. During the entire time from arraignment to trial—a period of approximately four months—Mr. Paterson was free on bond, but he did not flee, and he timely made every docket call, paying for the transportation between Miami and Albuquerque for either himself, his attorney, or both.

In sum, defendant has done everything that any person could do to show that he is not a risk of flight. In these circumstances, a finding to the contrary makes irrebuttable the rebuttable presumption that Congress expressly provided for in the Bail Reform Act of 1984. The only facts which might arguably support the district court's finding that defendant is a flight risk relate to his Canadian citizenship and ties to that country. However, Canada is not an uncivilized country, and we have extradition treaties with Canada that are routinely honored. In addition, defendant agreed to waive extradition. Thus, a provision for bail in an amount sufficient to reimburse the government if it did have to seek extradition would be sufficient to secure appellant's appearance. Thus, his Canadian citizenship, standing alone, is not a sufficient basis for finding that he presents a risk of flight. *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329–30, 99 S.Ct. 16, 18, 58 L.Ed.2d 33 (Brennan, Circuit Justice 1978).

Similarly, there was an insufficient basis for the district court's finding that defendant poses a danger to the community. Defendant has no prior convictions, and the only basis for the district court's finding is defendant's conviction in this case. Again, in the circumstances presented by this case, the district court's reliance on the underlying conviction creates an irrebuttable presumption that defendant presents a danger when Congress has expressly provided that the presumption is rebuttable.

### III.

The conditions of release that the district court found to be adequate prior to trial remain as valid after conviction as before. Therefore, I would remand this case to the district court with directions that defendant be released forthwith under the same terms and conditions as were found adequate by the district court to secure defendant's appearance at trial, except that, in its discretion, I would permit the court to order that defendant's bail pending appeal be secured by adequate collateral. In addition, I would permit the district court to provide for any such nonmonetary conditions of release as it deems necessary to assure that defendant will not flee the jurisdiction or pose a danger to the community.