720 A.2d 1170

**Thomas Eugene CLEMMONS**

v.

**STATE of Maryland.**

**No. 11, Sept. Term, 1998.**

Court of Appeals of Maryland.

Dec. 7, 1998.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

WILNER, Judge.

In an eight-count criminal information filed in the Circuit Court for Somerset County, petitioner was charged with second degree rape, first and second degree sexual offense, conspiracy to commit a second degree sexual offense, false imprisonment, kidnapping, assault, and battery. A jury acquitted him of the more serious charges but convicted him of conspiracy to commit a second degree sexual offense, assault, and battery. After merging the assault conviction, the court sentenced him to 18 years imprisonment for the conspiracy and five years, concurrent, for the battery. Those judgments were affirmed by a divided panel of the Court of Special Appeals.

We granted *certiorari* to consider whether the trial court erred in permitting Roger Christopher, an initial co-defendant who had earlier been convicted of a second degree sexual offense arising out of the same incident, to testify that he had been so convicted. We shall conclude that the court erred and thus reverse the judgment based on conspiracy. As we believe that the error did not in any way affect the conviction for battery and was, to that extent, harmless, we shall affirm the judgment entered on the battery conviction.

The charges against petitioner arose out of an episode that occurred on the evening of October 30, 1994, involving a 12–year old victim, Katrice. Katrice, who lived with her mother in Salisbury, testified that she went out with two other girls, Muffy and Mimi, ending up with Leonard Hassell at a fast-food restaurant. Hassell, who knew Muffy and Mimi, later drove the three girls to a house in Princess Anne where petitioner was residing. Katrice said that she thought Hassell was going to drive her home, but she did not protest going to Princess Anne. According to Katrice, no one was present at the home when they arrived, and Hassell, who had a key, let them in.

Much of the evidence of what happened at petitioner's home was in dispute. According to Katrice's account, Christopher and petitioner eventually arrived, and, at first, the group sat around a table talking. Hassell left for a time but later returned. At some point, Katrice and Muffy went into a bedroom, where Muffy searched through a dresser drawer and began "playing" with some money. After a while, they left the bedroom and went outside. Petitioner then came out, summoned them back into the house, and informed them that he was missing $170. He accused Katrice of taking the money and hit her with a belt. She denied taking or having any of his money, began to cry, and asked to be taken home. Petitioner refused, however, saying that she was going to "make his money" if she had to "suck everybody's penis around there." Christopher then joined them and asked to be first. Despite her tears and protest, petitioner ordered her into a bedroom, hit her several times with the belt, and forced her to

commit fellatio on Christopher. He then took her to another bedroom, hit her again until she disrobed, and raped her. After making her help clean up the room and threatening harm to her family if she said anything about what had occurred, he walked her to a store in Princess Anne, where she called her parents. Later, accompanied by her father, she guided the police to the house where the events occurred.

Following testimony by Katrice's father, who described the call from his daughter, her revelations and excited condition, and the subsequent trip with the police, the State called Christopher. Outside the presence of the jury, the judge recalled that Christopher had been a co-defendant in the case, that he had pled guilty to a second degree sexual offense, and that he had been sentenced to 20 years imprisonment. The record indicates that Christopher's trial occurred in February, 1995, about 20 months prior to petitioner's trial. When initially called, Christopher refused to testify on the ground that "I don't know anything." After establishing that there were no pending appeals from the judgment, the court ordered him to testify, even if to say that he had no knowledge of the events. The jury was brought in, and Christopher was sworn. The relevant part of his testimony was as follows:

"Q. Mr. Christopher, what is your current address, sir?

A. My current address is Maryland House of Correction.

Q. And why are you there?

A. I was found guilty by this court.

Q. Of what?

[Defense Counsel]: Objection

The Court: Basis?

[Defense Counsel]: I'm just curious if he's impeaching him or what.

The Court: Overruled. You may answer, sir.

A. I was found guilty of a charge in your courtroom, judge.

Q. You were convicted of second degree sex offense; is that correct?

A. Yes.

Q. Who was the victim in that case?

[Defense Counsel]: Objection.

The Court: Basis?

A. I don't know the name.

The Court: Wait a minute, wait a minute.

[Defense Counsel]: Relevancy.

The Court: Overruled.

By [Prosecutor]:

Q. I didn't hear you, sir?

A. I don't know the name.

Q. You don't know the victim's name?

A. No, I do not.

Q. Where did the act occur that you're convicted of?

A. On the address of the house. It's around on the back street here behind the courthouse.

Q. Do you know whose apartment it was?

A. Yes. It was Sharon Roberts apartment."

Thereafter, Christopher's memory supposedly collapsed. He said that he could not recall what time, or even what day, the events occurred, who was there, or even having discussed the matter with the prosecutor a week before trial. The prosecutor asked no further questions, and defense counsel declined cross-examination.

The State's case concluded with the testimony of a District Court Commissioner and the arresting police officer, both of whom related that, when eventually arrested and taken before the Commissioner, petitioner admitted (1) that Katrice had been brought to the house by Hassell, (2) that he was aware that she had committed fellatio on Christopher and was crying and upset, and (3) that he (petitioner) had struck Katrice with a belt for taking his money.

Testifying in his own defense, petitioner admitted that the three girls had been brought by Hassell to the apartment that he shared with one Sherman Roberts, the uncle of the girl he was then dating. At some point, he said, Muffy, Mimi, and

Hassell left. He denied that there was any sexual activity but admitted that he struck Katrice one time with his belt after she confessed to taking his money and not returning all of it. He said that he discovered $375 missing from his dresser and that, when he confronted Katrice, she returned $100 but claimed that she threw the rest outside. After he was unable to find the rest of the money, he accompanied Katrice to a pay phone so she could call her parents. Hassell testified that he saw Katrice return $100 to petitioner, following which he, Muffy, and Mimi left. Christopher was arrested the same evening. Petitioner said that he spent the night with his girlfriend and then returned to New York, unaware that a warrant for his arrest had been issued. He was not arrested until March, 1996—about 17 months after the event.[1]

## DISCUSSION

Though recognizing that the conviction of a co-conspirator is generally inadmissible to establish the guilt of a defendant, the panel majority of the Court of Special Appeals concluded that Christopher's testimony "fell short of informing the jury that the crime for which Mr. Christopher was incarcerated arose from the same incident as that for which [petitioner] was on trial." It declared, in addition, that his testimony "could have been elicited by the State for reasons other than using the conviction of a co-conspirator to prove the guilt of [petitioner]," offering, as an example never offered to the trial court, that it could "corroborate the victim's testimony as to the location of the event." That approach was not persuasive to Judge Alpert, who, in dissent, pointed out the obvious internal inconsistency between finding Christopher's testimony insufficient to suggest that the incident underlying Christopher's conviction was the same as that charged to petitioner, but

---

1. It appears from the pre-sentence investigation report that petitioner lived in New York. He informed the Division of Parole and Probation investigator that he was staying in Princess Anne for a few weeks, to visit a girlfriend, and that he had received permission from an acquaintance, Sherman Roberts, to stay at Roberts's apartment.

nonetheless corroborative of the location of the crimes charged to petitioner.

The State acknowledges that, ordinarily, the conviction or guilty plea of a co-perpetrator may not be used as substantive evidence of another's guilt. That principle, founded on concerns as to both relevance and unfair prejudice, is well established in Maryland and elsewhere. *See Gray v. State,* 221 Md. 286, 157 A.2d 261 (1960); *State v. Joynes,* 314 Md. 113, 549 A.2d 380 (1988); *United States v. Dworken,* 855 F.2d 12 (1st Cir.1988); *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir.1976); *United States v. Hutchings,* 751 F.2d 230 (8th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985); *United States v. Baez,* 703 F.2d 453 (10th Cir.1983); *United States v. Griffin,* 778 F.2d 707 (11th Cir.1985); *Knowles v. State,* 44 Ala.App. 163, 204 So.2d 506 (Ala.Ct.App. 1967); *State v. Salazar,* 173 Ariz. 399, 844 P.2d 566 (Ariz. 1992); *State v. Gargano,* 99 Conn. 103, 121 A. 657 (Conn.1923); *Thomas v. State,* 202 So.2d 883 (Fla.Dist.Ct.App.1967); *Hughes v. State,* 546 N.E.2d 1203 (Ind.1989); *Commonwealth v. Tilley,* 327 Mass. 540, 99 N.E.2d 749 (Mass.1951); *State v. Robertson,* 219 Neb. 782, 366 N.W.2d 429 (Neb.1985); *State v. Hunt,* 325 N.C. 187, 381 S.E.2d 453 (N.C.1989); *Commonwealth v. Thomas,* 443 Pa. 234, 279 A.2d 20 (Pa.1971); Annotation, *Prejudicial Effect of Prosecuting Attorney's Argument or Disclosure During Trial That Another Defendant Has Been Convicted or Has Pleaded Guilty,* 48 A.L.R.2d 1016 (1956 & Supp.).

The rationale for the general rule was well-explained in the A.L.R. annotation, at 1017:

"Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such offense or for separate offenses growing out of the same circumstances, and are tried separately, the fact that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other, since competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense, and

since each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence."

*See also United States v. Toner,* 173 F.2d 140, 142 (3d Cir.1949) ("[C]onviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else"). *United States v. Miranda,* 593 F.2d 590, 594 (5th Cir.1979); *United States v. Hansen,* 544 F.2d 778 (5th Cir. 1977). In *State v. Marcano,* 138 N.H. 643, 645 A.2d 661, 663 (N.H.1994), the court added that "[t]he potential for prejudice is overwhelming where evidence of a co-conspirator's conviction is admitted for substantive purposes. The jury may abdicate its duty and 'regard the issue of the remaining defendant's guilt as settled and the trial as a mere formality,'" quoting in part from *United States v. Griffin, supra,* 778 F.2d at 711.

The general rule excluding evidence of a co-conspirator's conviction or guilty plea does carry some exceptions with it, although they have been narrowly confined to situations where the evidence has a special relevance presented by the circumstances of the case and is not being used, substantively, to establish the defendant's guilt. In *United States v. Bryza,* 522 F.2d 414, 425 (7th Cir.1975), *cert. denied,* 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), the court concluded:

"Guilty pleas of co-defendants should be brought to the attention of the jury in only certain narrow instances; i.e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other co-defendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the subject."

In *United States v. Sanders,* 893 F.2d 133 (7th Cir.1990), the same court noted two other instances in which such

evidence may be allowed: "to foreclose the possibility that the government has singled out [the defendant] for prosecution, while permitting his co-defendant to go free," quoting from *United States v. McGrath,* 811 F.2d 1022, 1024 (7th Cir.1987), and "to blunt the impact of cross examination and to avoid the impression that the government was concealing the information," quoting from *United States v. Davis,* 838 F.2d 909, 918 (7th Cir.1988). *Davis,* and later *United States v. Darden,* 70 F.3d 1507 (8th Cir.1995), involved an accomplice or co-conspirator who had reached a plea agreement with the Government that required him to testify against the defendant. The Government was allowed to question the accomplice/co-conspirator about the plea agreement in order to blunt a clearly anticipated attack on his credibility. All of those kinds of "exceptions" have been generally recognized. *See United States v. Leach,* 918 F.2d 464 (5th Cir.1990); *United States v. Aronson,* 319 F.2d 48 (2d Cir.), *cert. denied,* 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963); *United States v. Martinez,* 775 F.2d 31 (2d Cir.1985); *United States v. Fleetwood, supra,* 528 F.2d 528; *State v. Braxter,* 568 A.2d 311 (R.I.1990); *People v. Brunner,* 797 P.2d 788 (Colo.App.1990); *State v. Johnson,* 787 S.W.2d 872 (Mo.App.1990). Judgments have also been affirmed when the defendant first introduced the matter or, in effect, invited the evidence as a response to his or her own strategy. *Boykin v. Leapley,* 471 N.W.2d 165 (S.D.1991); *United States v. Valley,* 928 F.2d 130 (5th Cir. 1991); *Strickland v. State,* 198 Ga.App. 570, 402 S.E.2d 532 (Ga.App.1991) (co-defendant's guilty plea admissible to impeach defense witness testimony that co-defendant shot victim accidentally). In *State v. Greeno,* 230 Neb. 568, 432 N.W.2d 547 (Neb.1988), the court held that a mistrial was not required when the co-defendant's conviction was not elicited by the prosecutor but was disclosed through an unresponsive answer of a witness.

We do not suggest any exhaustive list of exceptions to the general rule of inadmissibility. The ones noted above are the most common, but there may be others. The question really comes down to two considerations: (1) was the fact of

the co-defendant's conviction or plea offered, and could it reasonably have been taken, as substantive evidence of the defendant's guilt, rather than for some other appropriate purpose; and (2) if admitted improperly, could the error, under all of the circumstances, be found to be harmless under the prevailing test for harmless error. *See United States v. Gambino,* 926 F.2d 1355, 1366 (3d Cir.1991). It is with this background that we examine the State's and the Court of Special Appeals's proffered justification for Roger Christopher's testimony.

The State's argument springs from the fact that, in her opening statement, the prosecutor informed the jury that it would hear from Christopher "who was present in that apartment on that night. And he'll testify to his knowledge of what occurred on that evening." When Christopher was called, of course, he said that he had little or no recollection of what occurred. Thus, the State complains, it was unable to elicit the testimony that it had promised to deliver. From this, relying on *United States v. Darden, supra,* 70 F.3d 1507, *United States v. Davis, supra,* 838 F.2d 909, and *People v. Brunner, supra,* 797 P.2d 788, the State leaps to the argument that evidence of Christopher's conviction "was relevant both to show Christopher's acknowledgment of participation in the offense and to preempt a defense challenge to Christopher's credibility."

It is a leap too far. As we indicated, *Darden* and *Davis,* and inferentially *Brunner* as well, involved an accomplice or co-conspirator who had entered into a plea bargain that required his testimony against the defendant. The challenged evidence focused not so much on the guilty plea as on the agreement and was for the legitimate purpose of exposing in advance the basis for a credibility attack on the damaging testimony that the witness gave. That is not the situation here. Although it appears that Christopher had entered a guilty plea, there is nothing in this record even to suggest, much less to establish, that Christopher's conviction was based on a plea bargain that called either for leniency or for his testimony against petitioner. There is nothing to suggest that

he was called to testify pursuant to any plea agreement. He gave no helpful evidence against petitioner—and, indeed, told the State that he had no such evidence to give. In short, this case has nothing in common with *Davis, Darden,* or *Brunner;* there was no impeachment sting to draw based on his conviction.

The rationale of the Court of Special Appeals is equally unavailing. That court's conclusion that Christopher's testimony "fell short of informing the jury that the crime for which Mr. Christopher was incarcerated arose from the same incident as that for which [petitioner] was on trial" is belied by the record. In her opening statement, the prosecutor informed the jury that it would hear from Christopher "who was present in that apartment on that night. And he'll testify to his knowledge of what occurred that evening." Katrice testified in some detail as to how she was forced to commit fellatio on Christopher. Her father described the house where the events occurred as "right in back of the courthouse," which is consistent with Christopher's testimony. When asked where "the act occurred that you're convicted of," he responded that the house was "around on the back street here behind the courthouse." The coupling of that testimony from the father and Christopher leaves little doubt that Christopher's conviction arose from the same incident that formed part of the charges against petitioner. Indeed, the Court of Special Appeals necessarily recognized that connection when it suggested that the State "could have used the testimony to corroborate the victim's testimony as to the location of the event."

It is unmistakably clear that Christopher's testimony regarding his conviction was offered, and was likely to be taken by the jury, as substantive evidence against petitioner, that it was plainly inadmissible for that purpose, and that it was prejudicial. This was not a "slam dunk" case from the State's perspective. It depended largely on credibility—which of two versions the jury was going to believe. By acquitting petitioner of rape, the jury obviously did not credit Katrice's

testimony as to that event. Its decision to believe Katrice with respect to the second degree sexual offense—the fellatio—may very well have been influenced by its knowledge that the person directly involved in that act had been convicted as a result of it.

As we indicated, the wrongful admission of Christopher's conviction does not require a reversal of petitioner's battery conviction, which rested on entirely separate evidence, including his own testimonial admission that he struck Katrice with his belt.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE JUDGMENT BASED ON CONSPIRACY TO COMMIT SECOND DEGREE SEXUAL OFFENSE AND REMAND THAT COUNT TO CIRCUIT COURT FOR SOMERSET COUNTY FOR RETRIAL; JUDGMENT BASED ON BATTERY AFFIRMED; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY SOMERSET COUNTY.