**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: September 17, 2018

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. NO. A-1-CA-35500

**MELISSA RAE FLORES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Chief Judge.**

{1}     Defendant Melissa Rae Flores appeals her convictions for receiving or transferring a stolen vehicle and possession of burglary tools. She argues that the admission of a codefendant's indictment and plea, along with inadmissible hearsay testimony, denied her a fair trial. Defendant also raises the issue of an erroneous jury instruction and challenges the sufficiency of the evidence to support each of her convictions. Because we conclude that the State used the codefendant's plea agreement and indictment solely for the substantive purpose of proving the elements of receiving or transferring a stolen vehicle against Defendant thus violating her right to a fair trial and to due process under the Sixth and Fourteenth Amendments of the United States Constitution, we reverse and remand.

**BACKGROUND**

**Facts Leading to the Charges Against Defendant and Codefendant Scott Veretto**

{2}     Bernalillo County Sheriff's Department Detective Jerry Koppman was looking for Scott Veretto in August 2013. Koppman had previously arrested Veretto for stealing motorcycles and confirmed on NCIC that Veretto was a wanted fugitive.  When Koppman arrived at Veretto's last known address, he saw Veretto leave the residence, get into a Mustang, and drive away. Koppman learned the Mustang was registered to Cameron Ezell, so Koppman went to Ezell's house

to speak to him. Ezell told Koppman that he had let Veretto use his car and that Veretto was staying with Defendant, who was Veretto's girlfriend at the time. While at Ezell's residence, Koppman saw a partially disassembled Nissan Murano parked in the backyard. The vehicle identification number (VIN) plate had been removed from the Murano's dashboard, but Koppman found a label with the VIN on the inside of the driver's side door. A National Crime Information Center (NCIC) check established that Defendant's mother owned the vehicle.

{3}     Koppman then went to Defendant's mother's home, where Defendant also lived, and located Defendant. There, he saw a different and fully assembled Nissan Murano. The VIN plate on the dashboard of the Murano "appeared to have been tampered with." Defendant gave Koppman access to the inside of the Murano by crawling through the back of the car to unlock the car, and an NCIC search of the VIN from the secondary label confirmed that the vehicle was not owned by Defendant or her mother, but had been reported as stolen. Also, when Defendant opened the Murano for Koppman to examine the secondary VIN, he saw "a little computer" in the back of the vehicle. Defendant explained that she used the computer "to reset her key in order to start the car" using written instructions that Veretto had given to her. Defendant's mother thought that she held legal title to the fully assembled Murano as she had purchased a similar one from a dealership a few years earlier for Defendant to drive.

2

**{4}** Based on these facts, Defendant was charged with receiving or transferring a stolen vehicle, conspiracy to receive or transfer a stolen vehicle, possession of burglary tools, and two counts of harboring a felon. On the same date, the State charged Veretto with receiving or transferring a stolen vehicle, conspiracy to receive or transfer a stolen vehicle, possession of burglary tools, and other crimes related to vehicle theft. Veretto subsequently entered into a plea and disposition agreement in which he agreed to plead guilty to receiving or transferring a stolen 2007 white Nissan Murano and conspiracy to commit receiving or transferring a stolen 2007 white Nissan Murano, among other offenses. Defendant's case proceeded to trial.

**The State's Motion in Limine**

**{5}** Prior to trial, the State filed a motion in limine requesting, among other things, to introduce Veretto's plea and disposition agreement in order to "prove elements of the crime against . . . Defendant[,] . . . [s]pecifically, . . . to prove knowledge on behalf of . . . Defendant that Scott Veretto had committed a felony or felonies, and that . . . Defendant had reason to believe that the automobile which is the subject of Counts 1 and 2 was stolen." At a hearing on the motion, the State further explained that it was going to call Veretto to testify at trial and that it wanted to present Veretto's plea agreement as evidence for two reasons: First, "to show . . . the amount of motor vehicle thefts that [Veretto] has committed[,]"

which "goes to the knowledge element . . . that [Defendant] knew that [Veretto] had committed a felony" on "the harboring of the felon" count; and second, "to show, for the receiving . . . a stolen motor vehicle [count], . . . that she knew it was stolen" because she "presumably. . . got this motor vehicle from Mr. Veretto. . . . And conspiracy to commit. So that all goes to showing that [Veretto] conspired with [Defendant], which is one of the charges [Defendant is] charged with[.]" The State further said that it intended to admit the plea agreement "as substantive evidence . . . to show the knowledge components on [Defendant's] part." Defense counsel responded that he was concerned about the way that the State was trying to use Veretto's guilty plea. Although he acknowledged that the plea agreement could be used to impeach Veretto, defense counsel stated:

> I'm still a little concerned about the fact that the State is seeming to argue that this is relevant because he was convicted of a crime. It doesn't show that [Defendant] knew that [Veretto] committed a crime. The crime they're talking about is receiving or transferring a stolen motor vehicle, and the element that he could have pled to was that [Veretto] should have known it was stolen. That doesn't do anything to show [Defendant's] knowledge.

The district court said that it had "no idea what the testimony is going to be" but that the plea agreement was "usable for purposes of impeachment by [defense counsel], and [the State] can impeach [Veretto] with it as well, if, in fact, his testimony is contrary to what they intend to present here today." The court further stated that

4

in terms of whether it'll actually be admitted, I don't know. And whether that's going to be enough to show the state of mind of [Defendant] here remains to be seen. So I guess it's really hard for me to say, it's a little premature to make a firm decision about it, until I know what the foundation is going to be for purposes of trying to get it admitted. . . . So . . . let's hold that in abeyance until we hear some testimony.

As a final matter, the district court rejected Defendant's argument that the use of the plea agreement was "more prejudicial than probative."

**Use of Veretto's Testimony and Plea Agreement at Trial**

{6}     During its opening statement, the State told the jury that it would hear that Veretto "pled to being in receipt [or] possession of" the stolen Murano that was parked at Defendant's house, that Veretto "also pled to conspiring to being in receipt of that car[,]" and that "those are the same charges that [Defendant] is now charged with, being in possession of that stolen car[.]" Defense counsel did not object and, in the course of his opening, stated that Veretto "did enter into a plea agreement in his case; and, yes, he did agree to testify for the State and do whatever they asked him to." He then elaborated, telling the jury that

a big part of the incentive was the number of charges he was facing, the fact that he was facing additional enhancements as a habitual offender, anywhere up to eight years for each conviction that he has; and the fact that he currently has a probation violation pending, and that that probation violation has not been resolved, but he could end up going to prison as a result of that probation violation. And his testimony here today is happening before that probation violation issue is resolved for him, one way or the other.

5

So you will hear evidence regarding the bias and motivations of . . . Veretto[.]

{7} The State called Veretto to testify in its case in chief. Veretto initially refused to testify about anything in his plea agreement which he characterized as "lies." As a result, the State moved to admit certified copies of Veretto's indictment and plea agreement into evidence. Defense counsel objected, and the parties held a bench conference outside the presence of the jury. During the bench conference, defense counsel said,

> I think the only problem we have is, we discussed this in the motion in limine, and there was a more-prejudicial-than-probative argument with regards to the same charges that were against [Defendant]— against [Veretto]. So . . . [w]e don't want to waive any of the arguments we made in limine on this.

The district court responded, "I'm not sure why that would be—why [Veretto's] testimony, based upon what he pled to in the indictment, is going to be prejudicial to [Defendant] . . . . The question is whether it's more prejudicial than probative, and I'm finding it more probative than prejudicial. . . . They'll be admitted, over your objection."

{8} At the State's direction, Veretto read portions of his indictment to the jury:

> [I]n Bernalillo County, New Mexico, the above named defendant received or transferred possession of a . . . motor vehicle that the defendant knew or had reason to believe had been stolen or unlawfully taken from . . . another person; to wit, a white 2007 Nissan Murano, belonging to [another person], contrary to [NMSA 1978, Section 30-16D-4 (2009)].

Veretto confirmed that the name of the defendant on the indictment was his. Veretto then read the following portion of his plea agreement to the jury: "Receiving/transferring a stolen vehicle or motor . . . vehicle, a fourth-degree felony offense occurring on or between May 4, 2013, and October 19, 2013, as charged in Count 4 of [the] indictment[.] . . . [T]he defendant agrees to plead guilty to these crimes." Veretto further confirmed that the signature on the plea agreement was his. The plea and disposition agreement was admitted into evidence, and the State elicited no further testimony from Veretto.

{9}     After the State put on its case in chief, defense counsel moved for directed verdict on all of the charges. As to the count of receiving a stolen vehicle, the State argued that sufficient evidence supported the charge because, in pertinent part, "we have the fact that Scott Veretto pled to receiving and transferring this stolen motor vehicle. And [Defendant] had a relationship with Scott Veretto. So a jury, in the light most favorable to the State, can make the inference . . . that because he knew it, she knew it[.]" The district court granted Defendant's motion for directed verdict on the conspiracy count and one of the harboring a felon counts. It denied the motion as to the three remaining counts of receiving a stolen vehicle, possession of burglary tools, and harboring a felon. With regard to the count of being in possession of a stolen vehicle, the jury was instructed that the State had to prove beyond a reasonable doubt each of the following elements of the crime:

7

1. [D]efendant had possession of a white, 2007 Nissan Murano;

2. This vehicle had been stolen or unlawfully taken;

3. At the time [D]efendant had this vehicle in her possession she knew or had reason to know that this vehicle had been stolen or unlawfully taken;

4. This happened in New Mexico on or about the 4th day of May through the 19th day of October, 2013.

{10} Thereafter, using Veretto's plea agreement to establish Defendant's knowledge that the vehicle was stolen, the State argued during closing as follows:

And then what's the final piece of evidence . . . You have to show that [Defendant] knew it was stolen. . . . [Y]ou have the testimony of Scott Veretto. And you have in evidence his plea, and you have in evidence the indictment that identifies what he pled to. And he pled to receiving a stolen 2007 Nissan Murano.

. . . .

[Defendant] was aware, because her boyfriend was, . . . as you'll see in the plea and disposition agreement that will go back to the jury room with you, a car thief, who stole several cars. This was one of them, the 2007 white Murano.

{11} Neither the State nor defense counsel asked for—and the district court did not give—a limiting instruction informing the jurors that Veretto's plea agreement could not be used as substantive evidence of Defendant's guilt. The jury acquitted Defendant of the remaining harboring a felon count, but found her guilty of receiving a stolen vehicle and possession of burglary tools. This appeal followed.

## DISCUSSION

**Standard of Review**

**{12}** Defendant contends that the State introduced and used Veretto's indictment and plea agreement at trial solely as substantive evidence to establish her guilt. The State counters that Defendant failed to preserve her claim for review and that she "acquiesced in admission, and even 'opened the door' to it." We agree with Defendant.

**{13}** To the extent that the district court overruled defense counsel's timely objections, we review those evidentiary rulings under an abuse of discretion standard. *See State v. Duran*, 2015-NMCA-015, ¶ 11, 343 P.3d 207. "But we review de novo a misapprehension of the law upon which a court bases an otherwise discretionary evidentiary ruling." *Id.* (alterations, internal quotation marks, and citation omitted). And, when a defendant's federal constitutional rights have been violated, we review those violations under a harmless error standard. *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156. Error is not harmless "if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* (internal quotation marks and citation omitted); *see also State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110

9

(explaining that "reviewing courts should only conclude that a constitutional error is harmless when there is no reasonable *possibility* it affected the verdict[,]" as opposed to the "lower standard" of non-constitutional harmless error (alteration, internal quotation marks, and citations omitted)). In determining whether it is reasonably possible that the improper evidence contributed to the conviction, we evaluate "all of the circumstances surrounding the error[,]" which may include examining "the source of the error and the emphasis placed upon the error." *Tollardo*, 2012-NMSC-008, ¶ 43. Although other evidence of a defendant's guilt "can never be the singular focus[,]" it "may often be relevant" to help us understand, for example, "what role [the error] may have played in the trial proceedings[.]" *Id.* Thus, we may consider "the importance of the erroneously admitted evidence in the prosecution's case[.]" *Id.* (alteration, internal quotation marks, and citation omitted). The State has the burden on appeal to "establish[] beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." *Gutierrez*, 2007-NMSC-033, ¶ 18; *see also Tollardo*, 2012-NMSC-008, ¶ 36 ("[T]he reasonable possibility standard continues to resemble the reasonable doubt standard[.]" (internal quotation marks and citation omitted)).

**Use of a Codefendant's Guilty Plea**

{14}     "A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt." *United States v. Woods*, 764 F.3d 1242, 1246 (10th Cir. 2014)

(internal quotation marks and citation omitted); *see also United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981) (per curiam) ("As a principle of general acceptance, the guilty plea or conviction of a codefendant may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial."); *Clemmons v. State*, 720 A.2d 1170, 1173 (Md. 1998) (collecting cases from numerous jurisdictions that demonstrate this principle). There are at least two important purposes for this rule: First, "it curbs the jury's temptation to find guilt by association"; and second, "it helps to ensure the government must prove every element of an offense against the defendant; the government may not borrow proof from another person's conviction." *Woods*, 764 F.3d at 1246. "The rule is grounded in notions of fundamental fairness and due process[.]" *Id.*; *see also Bisaccia v. Att'y Gen. of the State of N.J.*, 623 F.2d 307, 312-13 (3d Cir. 1980) (explaining that this rule is grounded "on concepts of constitutional fairness" and holding that violation of the rule "amount[s] to a denial of constitutional due process").

{15}     Our Supreme Court first recognized this rule a century ago, and our appellate courts have continued to endorse it. *See State v. Martino*, 1918-NMSC-128, ¶ 2, 25 N.M. 47, 176 P. 815 (holding that the criminal information and guilty pleas of four men who unlawfully engaged in gambling upon the defendant's premises were not admissible to prove that the defendant knowingly permitted

11

gambling on his premises); *see also State v. Jackson*, 1943-NMSC-049, ¶¶ 9, 10, 13, 47 N.M. 415, 143 P.2d 875 (holding that a codefendant's testimony that he pleaded guilty to receiving stolen money—the same charge that the defendant was faced with—was erroneously admitted and "likely . . . was extremely prejudicial"); *State v. Gilbert*, 1982-NMCA-081, ¶ 29, 98 N.M. 77, 644 P.2d 1066 (recognizing that a "co-defendant's guilty plea may not be admitted . . . when that evidence is offered solely to prove [the] defendant's guilt"). In *Jackson*, our Supreme Court reasoned that the codefendant's guilty plea "was sufficient to authorize the court to pronounce sentence upon [the codefendant], but it was not conclusive proof of the *truth* of the charge . . . , and particularly not admissible as to elements of the offense as against a person not a party to [that] proceeding." 1943-NMSC-049, ¶ 14 (emphasis added). Recognizing that "[a]ccused persons are sometimes motivated to plead guilty to a charge rather than go to trial in the hope of acquiring leniency or some other advantage," the Court suggested that the proper way for the prosecution to have used the codefendant as a witness in that case would have been to elicit testimony from the codefendant "that he knew" the money was "stolen when he received it[.]" *Id.*

{16}     There are no recognized exceptions to the rule that a codefendant's guilty plea may not be used as *substantive* evidence to prove a defendant's guilt. *See United States v. Torres-Colon*, 790 F.3d 26, 31 (1st Cir. 2015) ("The government

12

cites no case—and we can find none—in which the guilty plea of a codefendant was permissibly used in this substantive way."); *Woods*, 764 F.3d at 1246 n.1 ("Because substantive evidence is evidence offered to help establish a fact in issue, as opposed to evidence directed to impeach or to support a witness's credibility, allowing plea evidence for any purpose other than credibility would require creating an exception to the general prohibition against using pleas as substantive evidence." (alteration, internal quotation marks, and citation omitted)). However, in certain narrow instances, a codefendant's guilty plea evidence may be used non-substantively. *United States v. Paterson*, 780 F.2d 883, 886 (10th Cir. 1986). Most commonly, guilty pleas may be used for the "purpose of aiding the jury in its assessment of the codefendant's credibility as a witness." *Woods*, 764 F.3d at 1246 (internal quotation marks and citation omitted); *see also Halbert*, 640 F.2d at 1004 ("Admissibility of the plea turns on the purpose for which it is offered. When that purpose is to further the jury's difficult task of evaluating credibility, it is relevant and admissible[.]"); *Tollardo*, 2012-NMSC-008, ¶ 20 ("A co-defendant's conviction . . . may be admissible when it is introduced to impeach that co-defendant if he or she testifies, rather than as substantive evidence of the defendant's guilt."). A guilty plea may also be mentioned at trial "where other co-defendants plead guilty during trial and are conspicuously absent" or "where opposing counsel has left the impression of unfairness which raises the issue or

13

invites comment on the subject." *Paterson*, 780 F.2d at 886 (internal quotation marks and citation omitted). Anytime a codefendant's guilty plea is used in one of these permissible ways, it is "critical" that the trial court give the jury "cautionary instructions limiting the jury's use of the guilty plea . . . as evidence relating to [the witness's] credibility" and not as proof that the defendant met any of the elements of the offenses with which she is charged. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983).

**Use of Codefendant's Guilty Plea Deprived Defendant of a Fair Trial**

{17}     In this case, the district court initially declined to "make a firm decision" on whether Veretto's guilty plea would "actually be admitted," reserving its ruling for trial when it could "hear some testimony." Defense counsel acknowledged that evidence of Veretto's plea agreement could be admissible if it was used for impeachment purposes. However, the record demonstrates that the State did not use Veretto's plea for impeachment or other permissible reasons, nor does the State make any effort to assert on appeal that it used the plea for any of these proper purposes. From its direct examination of Veretto, to its admission of Veretto's indictment and guilty plea agreement into evidence, the State used this evidence for the sole purpose of substantively proving the knowledge elements against Defendant. The State's opening and closing arguments further emphasized to the jury that it should use Veretto's guilty plea to find that Defendant knew or should

14

have known that the vehicle was stolen. *See Torres-Colon*, 790 F.3d at 31 (stating that they have found no precedent that allows a prosecutor's "bald introduction of a witness's guilty plea concerning facts or events similar to that for which the defendant is on trial[,] suggesting to the trier of fact that the defendant should be found guilty merely because of the witness's guilty plea" (omission, internal quotation marks, and citation omitted)); *United States v. Miranda*, 593 F.2d 590, 593 (5th Cir. 1979) (concluding that the prosecutor "deprived the defendant of a fair trial by deliberately urging the jury on two occasions to use [the guilty plea] evidence for a prohibited purpose"). And if the State's behavior at trial leaves any doubt that it planned to use the guilty plea improperly as substantive evidence, the statements it made during the hearings on its motion in limine (that it intended to use the plea agreement as substantive evidence) and Defendant's directed verdict motion ("that because [Veretto] knew it, [Defendant] knew it") make its intentions unmistakably clear. *See Clemmons*, 720 A.2d at 1175 (finding error where it was "unmistakably clear that [the codefendant]'s testimony regarding his conviction was offered, and was likely to be taken by the jury, as substantive evidence against [the defendant]," and concluding "that it was plainly inadmissible for that purpose, and that it was prejudicial"). For these reasons, we conclude that the State's use and the district court's admission of Veretto's guilty plea evidence in this case

15

"amount[ed] to a denial of constitutional due process[,]" *Bisaccia*, 623 F.2d at 313, and "deprived . . . [D]efendant of a fair trial[.]" *Miranda*, 593 F.2d at 593.

**The Deprivation of Defendant's Constitutional Rights Is Not Harmless Error**

{18} We next consider whether this deprivation of Defendant's constitutional rights resulted in harmless error—in other words, whether "there is no reasonable *possibility*" that the error "affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted); *see also Gutierrez*, 2007-NMSC-033, ¶ 18 (emphasizing that "in a proper harmless error analysis, the appellate court defers to the jury verdict *only* when the [s]tate has established beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." (internal quotation marks and citation omitted)). We conclude that the error was harmful for several reasons. First, "the source of the error" was not Defendant, but the State who repeatedly emphasized to the jury that Veretto's guilty plea evidence should be used to prove that Defendant was aware the car was stolen. *See Tollardo*, 2012-NMSC-008, ¶ 43. Second, Veretto's guilty plea was critical to the State's case because there was no other evidence—other than that she used a computer to start the car at the direction of her boyfriend, and the Murano's dashboard VIN showed evidence of tampering—to establish Defendant's knowledge that the vehicle had been stolen or unlawfully taken. *See id.* And third, the State did not meet its burden because it did not provide any analysis in this regard in its answer

brief on appeal. *See Gutierrez*, 2007-NMSC-033, ¶ 18 ("The [s]tate has the burden of establishing that the constitutional error was harmless beyond a reasonable doubt." (internal quotation marks and citation omitted)). Under these circumstances, we cannot say that "there is no reasonable possibility" that the substantive use of Veretto's guilty plea "affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted). To the contrary, substantive use of the plea in this case appears to have been highly prejudicial and tempted the jury to find Defendant guilty by association. *See Woods*, 764 F.3d at 1246 (recognizing that the reason for prohibiting substantive use of a codefendant's guilty plea is to "curb[] the jury's temptation to find guilt by association"); *Miranda*, 593 F.2d at 594 ("[A] codefendant's guilty plea or conviction with respect to similar or identical charges . . . is extremely prejudicial."); *see also Jackson*, 1943-NMSC-049, ¶ 13 (concluding that the codefendant's guilty plea evidence was "likely . . . extremely prejudicial"); *Clemmons*, 720 A.2d at 1175 (concluding that "[i]t is unmistakably clear" that substantive use of the codefendant's guilty plea "was prejudicial").

{19}     We are not persuaded by the State's arguments on appeal that our conclusion should be different. Contrary to the State's assertions, Defendant preserved her claim and did not "open[] the door" to the State's use of the plea as substantive evidence. Defense counsel objected to the evidence during the pre-trial hearing on

17

the State's motion in limine and during trial while Veretto was on the stand, arguing both times that admission of the plea would be prejudicial to Defendant and that Veretto's plea did not "do anything to show [Defendant's] knowledge." Defense counsel's discussion of the plea in his opening statement came in response to the State's use of the plea in its opening statement, and defense counsel's comments were confined to Veretto's credibility—they did not comment or otherwise open the door to the State's *substantive* use of Veretto's plea. *See, e.g.*, *Paterson*, 780 F.2d at 885-86 (noting that where defense counsel did not invite the error and where defense counsel's objection to the error was overruled, his subsequent failure to object to the admitted evidence may have been the result of tactical considerations). Moreover, any use that defense counsel tried to make of the improper guilty plea evidence during Veretto's cross-examination after the district court admitted the evidence over his objection does not waive his claim on appeal. *See, e.g.*, *State v. Zamarripa*, 2009-NMSC-001, ¶ 50, 145 N.M. 402, 199 P.3d 846 ("There is no waiver where a defense attorney, his or her original objection rejected by the court, determines to 'make the best of a bad situation' and argues the improperly admitted evidence in the client's favor.").

{20}     The State next argues that, because the district court decided that Veretto's guilty plea testimony was more probative than prejudicial under Rule 11-403 NMRA, Rule 11-105 NMRA forecloses Defendant's claim that Veretto's guilty

plea should not have been used because defense counsel did not request a limiting instruction. We disagree. Rule 11-105 states, in pertinent part, "If the court admits evidence that is admissible . . . for a purpose—but not . . . [admissible] for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Under these circumstances, a defendant's failure to request a limiting instruction "waive[s] any right to complain of the trial court's alleged error[,]" except in extreme circumstances under the fundamental and plain error doctrines. *DeMatteo v. Simon*, 1991-NMCA-027, ¶ 3, 112 N.M. 112, 812 P.2d 361; *see also State v. Allen*, 2000-NMSC-002, ¶ 51, 128 N.M. 482, 994 P.2d 728 (reviewing for fundamental and plain error the admission of evidence that had both an admissible and an inadmissible purpose, where the defendant failed to ask for a limiting instruction). Rule 11-105 does not apply in this case because Veretto's guilty plea evidence was not admitted for an admissible purpose. As demonstrated above, the State's sole purpose for including this evidence was for the inadmissible purpose of using it as substantive proof for the knowledge element of the crimes that Defendant was accused of committing.

{21}    Finally, the State contends that the rule against admitting a codefendant's guilty plea into evidence does not apply where a defendant is able to confront the codefendant at trial and the evidence served a non-hearsay purpose. We are not persuaded. The authorities cited by the State in support of this contention were

19

limited to evidentiary rules against hearsay and a defendant's constitutional rights under the Confrontation Clause. Here, admission of Veretto's guilty plea evidence for the sole purpose of using it as substantive proof against Defendant implicated her constitutional rights to due process and a fair trial. None recognize an exception to the rule against the substantive use of guilty plea evidence nor have we found a case that does so. *See Torres-Colon*, 790 F.3d at 31; *Woods*, 764 F.3d at 1246 n.1.

**Possession of Burglary Tools**

{22}    The reversal of Defendant's conviction for receiving a stolen vehicle necessarily requires that her conviction for possession of burglary tools be reversed as well. The instructions given to the jury for possession of burglary tools required the State to prove beyond a reasonable doubt, among other elements, that Defendant intended to use the automobile computer "for the purpose of committing burglary[.]" Whether Defendant intended to use this computer for the purpose of burglarizing the stolen vehicle depended on whether she knew that the vehicle was stolen. Because the district court improperly admitted Veretto's guilty plea evidence as substantive proof of Defendant's knowledge that the vehicle was stolen, there is a reasonable possibility that the improper evidence might have also contributed to the conviction for possession of burglary tools and that this

conviction was similarly "tainted by the constitutional error." *Gutierrez*, 2007-NMSC-033, ¶ 18 (internal quotation marks and citation omitted).

**CONCLUSION**

{23}     We reverse Defendant's convictions for receiving a stolen vehicle and possession of burglary tools and remand this case for a new trial.

{24}     **IT IS SO ORDERED.**


_____
                                    **LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**JULIE J. VARGAS, Judge**

21